DMB:MEH:slg:2000V00753

ORIGINAL

FILED
HARRISBURG
NOV 2 2 2000
MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

M. ASH-SHARIEF AL'ASKARI,      :
                Plaintiff      :
                               :
        v.                     :    Civil No. 1:CV-00-1449
                               :    (Judge Caldwell)
KATHLEEN HAWKES, et al.,       :    (Magistrate Judge Smyser)
                Defendant      :

**EXHIBITS TO BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

DAVID M. BARASCH
United States Attorney

MATTHEW E. HAGGERTY
Assistant U.S. Attorney
SHELLEY L. GRANT
Paralegal Specialist
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA   17109

Dated: November 22, 2000

INDEX

Exhibit No.

Declaration of Robin L. Gregg, Executive Assistant

Sentence Monitoring Computation Data . . . . . . . . . . 1

Administrative Remedy Generalized Retrieval . . . . . . . 2

Program Statement 1330.13 . . . . . . . . . . . . . . . . 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

Muhammad Ash-Sharif Al'Askari ,    :
       PLAINTIFF          :
                             :       1:CV-00-1449
                             :       (Caldwell, J.)
V.                         :       (Smyser, M.J.)
                             :
                             :
Kathy Hawk Sawyer, et al.,    :
       DEFENDANTS        :
                             :

### DECLARATION OF ROBIN L. GREGG, EXECUTIVE ASSISTANT

I, Robin L. Gregg, do declare and state as follows:

1.   I am employed by the United States Department of Justice, Federal Bureau of Prisons, and assigned to the Federal Correctional Institution, Allenwood, Pennsylvania (FCI-Allenwood) as the Executive Assistant. I have been employed by the BOP since August 11, 1991, and assigned to FCI-Allenwood in my current capacity since February 1999.

2.   As the Executive Assistant, I also serve as the institution's Administrative Remedy Coordinator. As such, I monitor the operation of the Administrative Remedy program at FCI-Allenwood, and ensure that the appropriate staff have the requisite knowledge to operate the program. Additionally, I am responsible for signing all rejection notices, and assuring the accuracy of all Administrative Remedy information maintained in the SENTRY database. Therefore, I have access to Bureau of Prisons records maintained in the ordinary course of business, particularly those relating to Administrative Remedies filed by inmates.

3.   Plaintiff is Muhammad Ash-Sharif Al'Askari, Register Number 34819-066, a Federal inmate currently incarcerated in the Federal Correctional Institution, Allenwood, Pennsylvania (FCI-Allenwood).  His projected release date is July 24, 2007, via Good Conduct Time release.  <u>Exhibit 1</u> is a true and correct copy of Plaintiff's Sentence Monitoring Computation Data.

4.   I am aware that, Plaintiff filed the within lawsuit alleging that staff at FCI-Allenwood allegedly prejudiced his access to court by confiscating his legal materials.  He further alleges that he was improperly sanctioned by the Discipline Hearing

Officer (DHO) as a result of two Incident Reports dated April 14, 1999. Inmate Askari, however, filed this lawsuit without first exhausting all available Administrative Remedies. Exhibit 2 is a true and correct copy of Inmate Askari's Administrative Remedy Generalized Retrieval.

5. The Bureau of Prisons has established an Administrative Remedy procedure through which an inmate can seek formal review of any complaint regarding any aspect of his imprisonment. That procedure is outlined and governed by BOP Program Statement 1330.13, Administrative Remedy Program. In order to exhaust appeals under the Administrative Remedy procedure, inmates must first attempt to informally resolve any issues of concern. Exhibit 3 is a true and correct copy of BOP Program Statement 1330.13, Administrative Remedy Program.

6. If the attempts by staff to informally resolve the issue are not successful, the inmate will have twenty days from the date the incident occurred to submit a formal Request for Administrative Remedy in the proper format. If all of the appropriate procedures are not strictly adhered to, the request may be rejected and returned to the inmate without a response. See Exhibit 3.

7. An exception to this initial filing rule applies to appeals from decisions of the DHO. Inmates filing such an appeal may bypass the initial stage and submit an appeal directly to the Regional Director. See Exhibit 3.

8. An inmate who is not satisfied with the Warden's response may appeal any decision to the appropriate Regional Director within twenty days of the date the Warden signed the response. Furthermore, an inmate who is not satisfied with a decision of the Regional Director may appeal to the BOP General Counsel within thirty days of the date the Regional Director signed the response. See Exhibit 3.

9. No Administrative Remedy is considered to have been fully exhausted until a response on the merits of the request is provided by the BOP Central Office.

10. As was previously noted, Plaintiff raised three separate issues in the complaint filed in this case. Specifically, he appealed two decisions of the DHO, and alleged that his access to court was impeded. Therefore, each of these three issues must have been exhausted before Plaintiff filed the complaint in this case.

11. In the ordinary course of business, computerized indexes of all administrative appeals filed by inmates are maintained by the

Regional and Central Offices so that rapid verification may be made as to whether an inmate has exhausted administrative appeals on a particular issue. A comprehensive review of these records indicates that Plaintiff has not exhausted any of the issues raised in the complaint. See Exhibit 2.

12. With respect to the allegation that his access to court was prejudiced after some of his property was confiscated, Plaintiff did file an Administrative Remedy at the institutional level on May 10, 1999 (Remedy ID 185790-F..). See Exhibit 2. That Administrative Remedy was rejected, however, because Plaintiff made no attempt to informally resolve the issue prior to pursuing formal relief. See Exhibit 2. When an Administrative Remedy request is rejected, no merits analysis or investigation is conducted, the request is returned to the inmate, and the inmate is afforded a reasonable period of time to correct the error and resubmit it at the same level. See Exhibit 3.

13. Rather than doing so, however, on June 22, 1999, Plaintiff submitted the same issue to the Regional Director (Remedy ID 185970-R1). That Administrative Remedy was rejected because it was raised at the regional level without first being considered at the institutional level. It was, therefore, rejected with instructions to resubmit it at the institutional level. See Exhibit 2.

14. Again, rather than following these instructions, Plaintiff submitted an Administrative Remedy to the BOP Central Office (Remedy ID 185970-A1). Again, the Administrative Remedy was rejected because it was raised at the wrong level. Again, Plaintiff was instructed to raise the issue at the institutional level. Nevertheless, to this date, Plaintiff has not refiled the request at the institutional level. As such, the issue of whether Plaintiff's access to court was prejudiced was never considered on the merits at any level because all of the Administrative Remedies he filed were rejected based upon Plaintiff's failure to follow the appropriate form as enunciated by Program Statement 1330.13. See Exhibits 2, 3.

15. Plaintiff also made an attempt to appeal the two decisions of the DHO. On June 16, 1999, he filed an appeal with the Regional Director (Remedy ID 188999-R2). That appeal was rejected because Plaintiff attempted to appeal two decisions of the DHO at the same time. Program Statement 1330.13 requires that all requests for Administrative Remedies and appeals contain only one issue. See Exhibit 3. Therefore, upon the rejection, Plaintiff was instructed to resubmit the appeals on two separate forms. He never did so, however. Instead, he filed an appeal with the BOP Central Office on July 20, 1999 (Remedy ID 18999-A1). That appeal was also rejected. Plaintiff was instructed to

resubmit his appeal at the regional level.  Again, to this date, no further appeals have been submitted. <u>See Exhibit 2.</u>

16.   Therefore, based upon my review of the appropriate Program Statement and Plaintiff's Administrative Remedy Generalized Retrieval, it is clear that Plaintiff has not exhausted all available Administrative Remedies prior to filing this lawsuit.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

Robin L. Gregg
Executive Assistant
FCI Allenwood

10/13/08
Date

# EXHIBIT - 1

```
  ALMD2  540*23 *          SENTENCE MONITORING        *    10-12-2000
PAGE 001          *          COMPUTATION DATA          *    07:44:55
                             AS OF 10-12-2000
```

REGNO..: 34819-066 NAME: ASKARI, MUHAMMAD

```
FBI NO...........: 37348L8            DATE OF BIRTH: 12-28-1947
ARS1.............: ALM/A-DES
UNIT.............: UNIT 3A            QUARTERS.....: C01-109U
DETAINERS........: NO                NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  07-24-2007 VIA GCT REL

----------------------CURRENT JUDGMENT/WARRANT NO: 030 ----------------------

```
COURT OF JURISDICTION...........: PENNSYLVANIA, EASTERN DISTRICT
DOCKET NUMBER...................: 2:92CR00288-1
JUDGE...........................: WALDMAN
DATE SENTENCED/PROBATION IMPOSED: 07-27-1995
DATE COMMITTED..................: 08-15-1995
HOW COMMITTED...................: RET STUDY/EXAM WITH SENTENCE
PROBATION IMPOSED...............: NO
```

```
                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $50.00         $00.00          $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00
```

-----------------------CURRENT OBLIGATION NO: 010 ---------------------------

```
OFFENSE CODE....:  551
OFF/CHG: 18:2113(A) BANK ROBBERY

 SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   210 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 DATE OF OFFENSE................: 04-23-1992
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

EXHIBIT

```
  ALMD2   540*23  *          SENTENCE MONITORING          *    10-12-2000
PAGE 002         *          COMPUTATION DATA             *    07:44:55
                              AS OF 10-12-2000
```

REGNO..: 34819-066 NAME: ASKARI, MUHAMMAD


------------------------CURRENT COMPUTATION NO: 030 -------------------------


COMPUTATION 030 WAS LAST UPDATED ON 05-05-1997 AT FAI AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 030: 030 010

```
DATE COMPUTATION BEGAN..........: 07-27-1995
TOTAL TERM IN EFFECT............:   210 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    17 YEARS       6 MONTHS

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                    04-23-1992     07-26-1995

TOTAL PRIOR CREDIT TIME.........: 1190
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT POSSIBLE..............: 823
TOTAL GCT AWARDED...............: 432
STATUTORY RELEASE DATE (CURRENT): 08-18-2008
SIX MONTH /10% DATE.............: 01-24-2007
EXPIRATION FULL TERM DATE.......: 10-24-2009


PROJECTED SATISFACTION DATE.....: 07-24-2007
PROJECTED SATISFACTION METHOD...: GCT REL
```


G0002       MORE PAGES TO FOLLOW . . .

```
  ALMD2  540*23 *         SENTENCE MONITORING       *     10-12-2000
  PAGE 003        *        COMPUTATION DATA          *     07:44:55
                           AS OF 07-12-1995
```

REGNO..: 34819-066 NAME: ASKARI, MUHAMMAD


```
FBI NO...........:                    DATE OF BIRTH: 12-28-1947
ARS1.............: ALM/A-DES
UNIT.............: UNIT 3A             QUARTERS.....: C01-109U
DETAINERS........: NO                  NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  07-12-1995 VIA STDY CMPLT

------------------------PRIOR JUDGMENT/WARRANT NO: 020 ------------------------


```
COURT OF JURISDICTION...........: PENNSYLVANIA, EASTERN DISTRICT
DOCKET NUMBER...................: 92-00288-01
JUDGE...........................: WALDMAN
DATE SENTENCED/PROBATION IMPOSED: 02-12-1993
DATE COMMITTED..................: 03-05-1993
HOW COMMITTED...................: 4241/44/45 HOSPITAL/TREATMENT
PROBATION IMPOSED...............: NO
```


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

------------------------PRIOR OBLIGATION NO: 010 ------------------------

OFFENSE CODE....:  551
OFF/CHG: 18, U.S.C. 2113 (A); BANK ROBBERY

```
 SENTENCE PROCEDURE.............: SRA 4244 HOSPITALIZATION AND TREATMENT
 SENTENCE IMPOSED/TIME TO SERVE.:   20 YEARS
 DATE OF OFFENSE................: 04-23-1992
```

```
REMARKS.......: DEFENDANT PROVISIONALLY SENTENCED PURSUANT TO 18, USC 4244(D)
                WHERE HE MAY RECEIVE SUITABLE TREATMENT OVER THIS PERIOD OR
                UNTIL SUCH TIME AS A CERTIFICATE PURSUANT TO 18, U.S.C. 4244
                (E), MAY BE FILED WITH THE COURT, IN WHICH EVENT A FINAL
                SENTENCING PROCEEDING WILL BE SCHEDULED PROMPTLY.
```


G0002       MORE PAGES TO FOLLOW . . .

Case 1:00-cv-01110-WHC   Document 18   Filed 11/22/2000   Page 11 of 52

```
ALMD2   540*23  *          SENTENCE MONITORING          *      10-12-2000
PAGE 004           *        COMPUTATION DATA             *      07:44:55
                            AS OF 07-12-1995

REGNO..: 34819-066 NAME: ASKARI, MUHAMMAD


-------------------------PRIOR COMPUTATION NO: 020 -------------------------


COMPUTATION 020 WAS LAST UPDATED ON 07-05-1995 AT SPG AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 020:   020 010

DATE COMPUTATION BEGAN..........: 02-12-1993
TOTAL TERM IN EFFECT............:     20 YEARS
TOTAL TERM IN EFFECT CONVERTED..:     20 YEARS

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                    04-23-1992     02-11-1993

TOTAL PRIOR CREDIT TIME.........: 295
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT POSSIBLE..............: 941
TOTAL GCT AWARDED...............: 162
STATUTORY RELEASE DATE (CURRENT): 06-03-2011
SIX MONTH /10% DATE.............: 03-24-2009
EXPIRATION FULL TERM DATE.......: 04-22-2012


ACTUAL SATISFACTION DATE........: 07-12-1995
ACTUAL SATISFACTION METHOD......: STDY CMPLT
ACTUAL SATISFACTION FACILITY....: SPG
ACTUAL SATISFACTION KEYED BY....: DRR

DAYS REMAINING..................: 6129
FINAL PUBLIC LAW DAYS...........: 0




G0002      MORE PAGES TO FOLLOW . . .
```

```
   ALMD2   540*23 *            SENTENCE MONITORING         *    10-12-2000
   PAGE 005        *            COMPUTATION DATA            *    07:44:55
                                AS OF 09-24-1986

REGNO..: 34819-066 NAME: ASKARI, MUHAMMAD


   FBI NO...........: 37348L8          DATE OF BIRTH: 12-28-1947
   ARS1.............: ALM/A-DES
   UNIT.............: UNIT 3A           QUARTERS.....: C01-109U
   DETAINERS........: UNKNOWN           NOTIFICATIONS: UNKNOWN

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  09-24-1986 VIA EXP W/GT

------------------------PRIOR JUDGMENT/WARRANT NO: 010 -------------------------


   COURT OF JURISDICTION...........: PENNSYLVANIA, EASTERN DISTRICT
   DOCKET NUMBER...................: 85-00044-01
   JUDGE...........................: HUYETT
   DATE SENTENCED/PROBATION IMPOSED: 07-08-1985
   DATE WARRANT ISSUED.............: N/A
   DATE WARRANT EXECUTED...........: N/A
   DATE COMMITTED..................: 07-25-1985
   HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
   PROBATION IMPOSED...............: NO
   SPECIAL PAROLE TERM.............:


   RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

-------------------------PRIOR OBLIGATION NO: 010 --------------------------

   OFFENSE CODE....:  132
   OFF/CHG: POSS. OF A FIREARM BY A CONVICTED FELON

    SENTENCE PROCEDURE.............: 4205(A) REG ADULT-ORIG TERM GRTR THAN 1YR
    SENTENCE IMPOSED/TIME TO SERVE.:    2 YEARS








   G0002        MORE PAGES TO FOLLOW . . .
```

REGNO..: 34819-066 NAME: ASKARI, MUHAMMAD


--------------------------PRIOR COMPUTATION NO: 010 --------------------------


COMPUTATION 010 WAS LAST UPDATED ON 01-17-1989 AT RBK AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:    010 010

DATE COMPUTATION BEGAN..........: 07-08-1985
TOTAL TERM IN EFFECT............:    2 YEARS
TOTAL TERM IN EFFECT CONVERTED..:    2 YEARS

JAIL CREDIT.....................:    FROM DATE    THRU DATE
                                     02-28-1985   07-07-1985

TOTAL JAIL CREDIT TIME..........: 130
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 6
TOTAL SGT POSSIBLE..............: 144
PAROLE ELIGIBILITY..............: 10-28-1985
STATUTORY RELEASE DATE..........: 04-27-1986
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: 08-31-1986
EXPIRATION FULL TERM DATE.......: 02-27-1987

NEXT PAROLE HEARING DATE........: 02-00-1986
TYPE OF HEARING.................: INITIAL

ACTUAL SATISFACTION DATE........: 09-24-1986
ACTUAL SATISFACTION METHOD......: EXP W/GT
ACTUAL SATISFACTION FACILITY....: RBK
ACTUAL SATISFACTION KEYED BY....: MMC

DAYS REMAINING..................: 156
FINAL PUBLIC LAW DAYS...........: 0


G0000      TRANSACTION SUCCESSFULLY COMPLETED

# EXHIBIT - 2

```
   ALMD2        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *       10-12-2000
PAGE 001 OF                                                          08:22:52
      FUNCTION: L-P SCOPE: REG   EQ 34819-066    OUTPUT FORMAT: FULL
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------

DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____

DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____

SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____

EXTENDED: _ REMEDY LEVEL: _ _           RECEIPT: _ _ _ "OR" EXTENSION: _ _ _

RCV  OFC : EQ ____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____

        PERSON: ____
          TYPE: ____ _____ _____ _____ _____ _____
EVNT FACL: EQ ____
RCV FACL.: EQ ____ _____ _____ _____ _____ _____
RCV UN/LC: EQ ____

RCV QTR..: EQ _____ _____ _____ _____ _____ _____

ORIG FACL: EQ ____ _____ _____ _____ _____ _____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____

ORIG QTR.: EQ _____ _____ _____ _____ _____ _____
```



EXHIBIT

```
ALMD2          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      10-12-2000
PAGE 002 OF      *           FULL SCREEN FORMAT              *      08:22:52


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A            QTR.: C01-109U   RCV OFC: FAI
REMEDY ID: 42171-F1       SUB1: 22AM SUB2:     DATE RCV:   02-04-1993
UNT RCV..: A            QTR RCV.: ADM DET      FACL RCV: FAI
UNT ORG..: A            QTR ORG.: ADM DET      FACL ORG: FAI
EVT FACL.: FAI    ACC LEV: FAI  2 NER  1          RESP DUE:
ABSTRACT.: SEEKS EXPLANATION FOR BEING SHU
STATUS DT: 02-05-1993  STATUS CODE: REJ STATUS REASON: INF
INCRPTNO.:             RCT: EXT:   DATE ENTD: 02-05-1993
REMARKS..:




REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A            QTR.: C01-109U   RCV OFC: FAI
REMEDY ID: 42171-F2       SUB1: 22AM SUB2:     DATE RCV:   02-11-1993
UNT RCV..: A            QTR RCV.: ADM DET      FACL RCV: FAI
UNT ORG..: A            QTR ORG.: ADM DET      FACL ORG: FAI
EVT FACL.: FAI    ACC LEV: FAI  2 NER  1          RESP DUE:  FRI  02-26-1993
ABSTRACT.: SEEKS EXPLANATION FOR BEING SHU
STATUS DT: 02-26-1993  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:             RCT: P EXT:   DATE ENTD: 02-11-1993
REMARKS..:
```

```
ALMD2          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     10-12-2000
PAGE 003 OF     *               FULL SCREEN FORMAT            *     08:22:52


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A             QTR.: C01-109U   RCV OFC: NER
REMEDY ID: 42171-R1        SUB1: 22AS SUB2:     DATE RCV:   03-04-1993
UNT RCV..: A           QTR RCV.: ADM DET        FACL RCV: FAI
UNT ORG..: A           QTR ORG.: ADM DET        FACL ORG: FAI
EVT FACL.: FAI     ACC LEV:  FAI  2 NER  1          RESP DUE:  SAT  04-03-1993
ABSTRACT.: CONCERNED OVER PLACEMENT IN ADMIN DET.
STATUS DT: 03-11-1993  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 03-10-1993
REMARKS..:




REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A             QTR.: C01-109U   RCV OFC: SPG
REMEDY ID: 48640-F1        SUB1: 15BM SUB2:     DATE RCV:   06-09-1993
UNT RCV..: MENTL HLTH   QTR RCV.: 10-B          FACL RCV: SPG
UNT ORG..: MENTL HLTH   QTR ORG.: 10-B          FACL ORG: SPG
EVT FACL.: SPG     ACC LEV:  SPG  1                 RESP DUE:  THU  06-24-1993
ABSTRACT.: COMPLAINS OF DENIAL OF ACCESS TO RLG SVC
STATUS DT: 06-21-1993  STATUS CODE: CLO STATUS REASON: OTH
INCRPTNO.:            RCT: D EXT:   DATE ENTD: 06-09-1993
REMARKS..:
```

```
ALMD2            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     10-12-2000
PAGE 004 OF      *              FULL SCREEN FORMAT              *     08:22:52


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A              QTR.: C01-109U   RCV OFC: SPG
REMEDY ID: 49573-F1        SUB1: 25DM SUB2:      DATE RCV:   06-28-1993
UNT RCV..: MENTL HLTH   QTR RCV.: 10-B           FACL RCV: SPG
UNT ORG..: MENTL HLTH   QTR ORG.: 10-B           FACL ORG: SPG
EVT FACL.: SPG     ACC LEV: SPG  1                 RESP DUE:   WED  07-28-1993
ABSTRACT.: LT. TOOK SUNGLASSES AND DIDN'T RETURN THEM
STATUS DT: 07-23-1993  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: D EXT: D DATE ENTD: 06-29-1993
REMARKS..:



REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A              QTR.: C01-109U   RCV OFC: FAI
REMEDY ID: 115959-F1       SUB1: 34AM SUB2:      DATE RCV:   08-15-1996
UNT RCV..: C            QTR RCV.: C UNT L        FACL RCV: FAI
UNT ORG..: C            QTR ORG.: C UNT L        FACL ORG: FAI
EVT FACL.: FAI    ACC LEV:                         RESP DUE:
ABSTRACT.: COMPLAINT AGAINST VARIOUS STAFF
STATUS DT: 08-16-1996  STATUS CODE: REJ STATUS REASON: MSI OTH
INCRPTNO.:          RCT:  EXT:  DATE ENTD: 08-16-1996
REMARKS..: IT IS UNCLEAR AS TO WHICH STAFF YOU ARE COMPLAINING
           ABOUT.  IF BOTH, THEN YOU NEED TO SEPARATE REQUESTS.
           CLEARLY STATE ISSUE AND WHAT YOU ARE SEEKING.
```

```
ALMD2          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      10-12-2000
PAGE 005 OF     *             FULL SCREEN FORMAT            *      08:22:52


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A          QTR.: C01-109U   RCV OFC: FAI
REMEDY ID: 135281-F1      SUB1: 22AM SUB2:   DATE RCV:   05-22-1997
UNT RCV..: C             QTR RCV.: ADM DET   FACL RCV: FAI
UNT ORG..: C             QTR ORG.: ADM DET   FACL ORG: FAI
EVT FACL.: FAI    ACC LEV: FAI  1                   RESP DUE:  WED  06-11-1997
ABSTRACT.: WHY IN SHU
STATUS DT: 06-10-1997  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 05-30-1997
REMARKS..:



REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A          QTR.: C01-109U   RCV OFC: FAI
REMEDY ID: 135283-F1      SUB1: 1OZM SUB2:   DATE RCV:   05-29-1997
UNT RCV..: C             QTR RCV.: ADM DET   FACL RCV: FAI
UNT ORG..: C             QTR ORG.: ADM DET   FACL ORG: FAI
EVT FACL.: FAI    ACC LEV:                         RESP DUE:
ABSTRACT.: LT. SAID TO GET RID OF HIM
STATUS DT: 05-30-1997  STATUS CODE: REJ STATUS REASON: INF
INCRPTNO.:            RCT:   EXT:   DATE ENTD: 05-30-1997
REMARKS..:
```

```
 ALMD2            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     10-12-2000
 PAGE 006 OF       *              FULL SCREEN FORMAT           *     08:22:52


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A           QTR.: C01-109U   RCV OFC: NER
REMEDY ID: 135283-R1      SUB1: 10ZM SUB2: 34ZM DATE RCV:  06-12-1997
UNT RCV..: C            QTR RCV.: ADM DET       FACL RCV: FAI
UNT ORG..: C            QTR ORG.: ADM DET       FACL ORG: FAI
EVT FACL.: FAI    ACC LEV:                           RESP DUE:
ABSTRACT.: TRANSFER/& STAFF COMPLAINT
STATUS DT: 06-19-1997  STATUS CODE: REJ STATUS REASON: INF OTH
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 06-19-1997
REMARKS..: THE WARDEN PROPERLY REJECTED YOUR BP-9.  YOU
           PROVIDE NO PROOF OF INFORMAL RESOLUTION.


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A           QTR.: C01-109U   RCV OFC: ALM
REMEDY ID: 180730-F1      SUB1: 33GM SUB2:      DATE RCV:  05-10-1999
UNT RCV..: UNIT 3A      QTR RCV.: C04-226U      FACL RCV: ALM
UNT ORG..: UNIT 3A      QTR ORG.: C04-226U      FACL ORG: ALM
EVT FACL.: ALM    ACC LEV:                           RESP DUE:
ABSTRACT.: ATTORNEY CONFISCATED LEGAL MATERIAL
STATUS DT: 05-10-1999  STATUS CODE: REJ STATUS REASON: INF CON
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 05-10-1999
REMARKS..:
```

```
ALMD2           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      10-12-2000
PAGE 007 OF      *              FULL SCREEN FORMAT              *     08:22:52


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A            QTR.: C01-109U   RCV OFC: NER
REMEDY ID:                    SUB1: 20DS SUB2:     DATE RCV:   06-16-1999
UNT RCV..: UNIT 3A       QTR RCV.: Z05-015UAD     FACL RCV: ALM
UNT ORG..: UNIT 3A       QTR ORG.: Z05-015UAD     FACL ORG: ALM
EVT FACL.: ALM    ACC LEV:                           RESP DUE:
ABSTRACT.:
STATUS DT: 07-12-1999 STATUS CODE: VOD STATUS REASON:
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 06-17-1999
REMARKS..: WILL BE REJECTED UNDER R2.




REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A            QTR.: C01-109U   RCV OFC: NER
REMEDY ID:                    SUB1: 20DS SUB2:     DATE RCV:   06-16-1999
UNT RCV..: UNIT 3A       QTR RCV.: Z05-015UAD     FACL RCV: ALM
UNT ORG..: UNIT 3A       QTR ORG.: Z05-015UAD     FACL ORG: ALM
EVT FACL.: ALM    ACC LEV:                           RESP DUE:
ABSTRACT.:
STATUS DT: 07-12-1999 STATUS CODE: REJ STATUS REASON: MLT RSR
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 07-12-1999
REMARKS..: YOU ARE APPEALING TWO INCIDENT REPORTS.  YOU MUST RE
           -FILE ON SEPERATE FORMS, WITHIN 15 DAYS.
```

```
ALMD2          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      10-12-2000
PAGE 008 OF      *            FULL SCREEN FORMAT              *      08:22:52


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A            QTR.: C01-109U   RCV OFC: NER
REMEDY ID:                 SUB1: 33GM SUB2:    DATE RCV:   06-22-1999
UNT RCV..: UNIT 3A       QTR RCV.: C01-109U    FACL RCV: ALM
UNT ORG..: UNIT 3A       QTR ORG.: C04-226U    FACL ORG: ALM
EVT FACL.: ALM    ACC LEV:                        RESP DUE:
ABSTRACT.:
STATUS DT: 06-25-1999  STATUS CODE: REJ STATUS REASON: SEN INF CON
INCRPTNO.:         RCT:    EXT:   DATE ENTD: 06-25-1999
REMARKS..: THE WARDEN PROPERLY REJECTED YOUR BP-9.  YOU MUST
            RESUBMIT AT THE INSTITUTIONAL LEVEL IN PROPER
            FORM.


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A            QTR.: C01-109U   RCV OFC: BOP
REMEDY ID:                 SUB1: 20DS SUB2:    DATE RCV:   07-20-1999
UNT RCV..: UNIT 3A       QTR RCV.: C01-109U    FACL RCV: ALM
UNT ORG..: UNIT 3A       QTR ORG.: Z05-015UAD  FACL ORG: ALM
EVT FACL.: ALM    ACC LEV:                        RESP DUE:
ABSTRACT.:
STATUS DT: 07-20-1999  STATUS CODE: REJ STATUS REASON: WRL
INCRPTNO.:         RCT:    EXT:   DATE ENTD: 07-26-1999
REMARKS..: YOU MUST REFILE YOUR APPEAL AT THE REGIONAL LEVEL.
```

```
ALMD2          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      10-12-2000
PAGE 009 OF 009 *              FULL SCREEN FORMAT              *      08:22:52


REGNO: 34819-066 NAME: ASKARI, MUHAMMAD
RSP OF...: ALM UNT/LOC/DST: UNIT 3A          QTR.: C01-109U   RCV OFC: BOP
REMEDY ID: ▓▓▓▓▓▓▓        SUB1: 33GM SUB2:    DATE RCV:   07-20-1999
UNT RCV..: UNIT 3A      QTR RCV.: C01-109U    FACL RCV: ALM
UNT ORG..: UNIT 3A      QTR ORG.: C04-226U    FACL ORG: ALM
EVT FACL.: ALM    ACC LEV:                        RESP DUE:
ABSTRACT.: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
STATUS DT: 07-20-1999  STATUS CODE: REJ STATUS REASON: SEN WRL
INCRPTNO.:            RCT:   EXT:   DATE ENTD: 07-26-1999
REMARKS..: YOU MUST FIRST RAISE THIS ISSUE AT THE INSTITUTIONAL
           LEVEL.




                 15 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

**EXHIBIT - 3**

# WordPerfect Document: PS1330.13 ADMINISTRATIVE REMEDY PROGRAM

| Previous Document | Next Document | First Hit | Native WordPerfect | View Image | Back to Results | New Query | Help |
|---|---|---|---|---|---|---|---|

PS1330.13 ADMINISTRATIVE REMEDY PROGRAM



**U.S. Department of Justice**

Federal Bureau of Prisons

# Change Notice

**DIRECTIVE BEING CHANGED:** 1330.13

**CHANGE NOTICE NUMBER:** CN-03

**DATE:** October 7, 1997

1. <u>PURPOSE AND SCOPE</u> . To update the Administrative Remedy Program Statement, PS 1330.13.

2. <u>SUMMARY OF CHANGES</u> . This Change Notice removes all SENTRY transaction codes and replaces them with function descriptions.

The attachment is now incorporated in the updated Technical Reference Manual, TRM 1301.02 which is being issued concurrent with the issuance of this Change Notice.

3. <u>TABLE OF CHANGES</u>

<u>Remove Insert</u>

Pages 11 and 12 Pages 11 and 12

Attachment A, Pages 1 - 9



doc at 10.113.1.53

4. <u>ACTION</u> . File this Change Notice in front of PS 1330.13, Administrative Remedy Program.

/s/

Kathleen M. Hawk

Director



**U.S. Department of Justice**

Federal Bureau of Prisons

## Change

## Notice

**DIRECTIVE BEING CHANGED:** 1330.13

**CHANGE NOTICE NUMBER:** CN-02

**DATE:** April 14, 1997

1. <u>PURPOSE AND SCOPE</u> . To transmit page changes to PS 1330.13, the Administrative Remedy Program.

2. <u>SUMMARY OF CHANGES</u> . The General Accounting Office no longer requires the "Annual Report of Holdings"; therefore, this Change Notice removes the requirement for locations to maintain a record of the volume, by year, of the Administrative Remedy case files destroyed.

3. <u>TABLE OF CHANGES</u>

<u>Remove Insert</u>

Page 15 Page 15·

4. <u>ACTION</u> . File this Change Notice in front of PS 1330.13, Administrative Remedy Program.

\ s\

doc at 10.113.1.53

Kathleen M. Hawk

Director



**U.S. Department of Justice**

Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 1330.13

**CHANGE NOTICE NUMBER:** CN-01

**DATE:** April 24, 1996

1. PURPOSE AND SCOPE . To transmit page changes to Program Statement 1330.13, Administrative Remedy Program.

2. SUMMARY OF CHANGES . This Change Notice requires an inmate that is illiterate, disabled, or not functionally literate in English, to contact a staff member if he/she needs assistance in the preparation or submission of an Administrative Remedy or Appeal. It also removes the requirement that the Wardens, Regional Offices, and Central Office Administrative Remedy Files be maintained by case number.

3. TABLE OF CHANGES .

Remove Insert

Pages 10 and 13 Pages 10 and 13 (CN-01)

4. ACTION . File this Change Notice in front of Program Statement 1330.13, Administrative Remedy Program.

\ s\

Kathleen M. Hawk

Director



**U.S. Department of Justice**

Federal Bureau of Prisons

Program Statement

**OPI:** OGC

**NUMBER:** 1330.13

**DATE:** December 22, 1995

**SUBJECT:** Administrative Remedy Program

**EFFECTIVE DATE:** February 5, 1996

---

1. [ <u>**PURPOSE AND SCOPE**</u> **§542.10. The Administrative Remedy Program is a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement, except as excluded in §542.12, if less formal procedures have not resolved the matter. This Program applies to all inmates confined in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement but does not apply to inmates confined in other non-federal facilities.]**

2. <u>PROGRAM OBJECTIVES</u> . The expected results of this program are:

a. A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.

b. Each request, including appeals, will be responded to within the timeframes allowed.

c. A record of Inmate Administrative Remedy Requests and Appeals will be maintained.


d. Bureau policies will be more correctly interpreted and applied by staff.

3. <u>DIRECTIVES AFFECTED</u>

a. <u>Directive Rescinded</u>

P.S. 1330.11 Administrative Remedy Procedure for Inmates (10/29/93)

**[Bracketed Bold]** - Rules

Regular Type - Implementing Information

P.S. 1330.13

December 22, 1995

Page 2

b. <u>Directives Referenced</u>

P.S. 1320.03 Claims Under the Federal Tort Claims Act (01/04/93)

P.S. 4500.04 Trust Fund Manual (12/15/95)

P.S. 5212.06 Control Unit Programs ( 08/29/95)

P.S. 5214.03 Procedures for Handling HIV Positive Inmates Who Pose Danger to Others (10/02/87)

P.S. 5264.06 Telephone Regulations for Inmates (12/22/95)

P.S. 5270.07 Inmate Discipline and Special Housing Units (12/29/87)

P.S. 5890.11 SENTRY-National On-Line Automated Information System (05/27/94)

28 CFR 301 Inmate Accident Compensation

28 CFR 16.10 Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c. Rules cited in this Program Statement are contained in

28 CFR 542.10 through 542.19.

4. <u>STANDARDS REFERENCED</u>

a. American Correctional Association Foundation/Core Standards for Adult Correctional Institutions: FC2-4083, FC2-4099, C2-4196, C2-4204.

b. American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4236, 3-4271, 3-4393, 3-4434.

c. American Correctional Association Foundation/Core Standards for Adult Local Detention Facilities: FC2-5094, FC2-5096, C2-5200, and C2-5216.

d. American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3C-22, 3-ALDF-3E-11, 3-ALDF-4G-07, and 3-ALDF-5D-06.

5. [ **RESPONSIBILITY** §542.11.

**a. The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:**

**(1) Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;]**

See Section 13 for further information on remedy processing, including use of SENTRY.

P.S. 1330.13

December 22, 1995

Page 3

**[(2) Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;]**

The receipt is generated via SENTRY.

**[(3) Conduct an investigation into each Request or Appeal;**

**(4) Respond to and sign all Requests or Appeals filed at their levels . At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.]**

§ 542.11 refers to Section 5 of this Program Statement.

For purposes of this Program Statement, the term "institution" includes Community Corrections Centers (CCCs); the term "Warden" includes Camp Superintendents and Community Corrections Managers (CCMs) for Requests filed by CCC inmates; and the term "inmate" includes a former inmate who is entitled to use this program.

(5) The Warden shall appoint one staff member, ordinarily above

the department head level, as the Administrative Remedy Coordinator (Coordinator) and one person to serve as Administrative Remedy Clerk (Clerk). The Regional Director and the National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

To coordinate the regional office program, each Regional Director shall also appoint an Administrative Remedy Coordinator of at least the Regional Administrator level, ordinarily the Regional Counsel, and an Administrative Remedy Clerk. The National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

(6) The Administrative Remedy Coordinator shall monitor the program's operation at the Coordinator's location and shall ensure that appropriate staff (e,g., Clerk, unit staff) have the knowledge needed to operate the procedure. The Coordinator is responsible for signing any rejection notices and ensuring the accuracy of SENTRY entries, e.g., abstracts, subject codes, status codes, and dates. The Coordinator also shall serve as the primary point of contact for the Warden or Regional Director in discussions of ◄▒ *Administrative* ► ◄ *Remedies* ► appealed to higher levels.

(7) The Administrative Remedy Clerk shall be responsible for all clerical processing of ◄ *Administrative* ► ◄ *Remedies* ► ▒►, for accurately maintaining the SENTRY index, and for generating SENTRY inmate notices.

P.S. 1330.13

December 22, 1995

Page 4

(8) The Unit Manager is responsible for ensuring that inmate notices (receipts, extension notices, and receipt disregard notices from institutions, regions and the Central Office) are printed and delivered daily for inmates in their units and for deleting those notices from SENTRY promptly after delivery to the inmate. CCMs are responsible for this function for inmates under their supervision.

**[b. Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.]**

No limitation shall be taken on any inmate except as provided in Section 8.d. of this Program Statement.

6. [ **EXCLUDED MATTERS** §542.12.

**a. An inmate may not use this Program to submit a Request or Appeal on behalf of another inmate. This program is intended to address concerns that are personal to the inmate making the**

Request or Appeal, but shall not prevent an inmate from obtaining assistance in preparing a Request or Appeal, as provided in § 542.16 of this part.]

§ 542.16 refers to Section 10 of this Program Statement.

The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

**[b. Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims, Inmate Accident Compensation claims, and Freedom of Information or Privacy Act requests. Staff shall inform the inmate in writing of the appropriate administrative procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program.]**

(1) Except as provided in subsection (3) below, this Administrative Remedy Program does not provide monetary relief . For this reason, the Coordinator shall ensure that an inmate's Request or Appeal is returned when it is clear that the only possible relief is monetary. The Coordinator shall ensure that the inmate is advised that a monetary request is more appropriately submitted under the Federal Tort Claims Act (FTCA).

(2) When corrective action as well as monetary relief is requested or implicated, inmates may use this Program. The response to such Requests or Appeals shall address the potential non- monetary relief, and advise the inmate that the FTCA is the appropriate procedure to seek monetary relief.

(3) Correction of inmate pay, commissary errors, and appeal of decisions on lost time wage payment are appropriate issues for

P.S. 1330.13

December 22, 1995

Page 5

this Program. See 28 CFR § 301.204 ( inmate accident compensation) regarding lost time wages. Corrections of erroneous charges or credits to an inmate's telephone account and the award of refunds for telephone service problems are also appropriate issues for this Program. See the Program Statement on Telephone Regulations for Inmates regarding such recredits.

## 7. [ INFORMAL RESOLUTION §542.13

**a. Informal Resolution . Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue**

**before an inmate submits a Request for Administrative Remedy. Each warden shall establish procedures to allow for the informal resolution of inmate complaints.]**

The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff. These procedures may not operate to limit inmate access to formal filing of a Request.

**[b. Exceptions . Inmates in CCCs are not required to attempt informal resolution. An informal resolution attempt is not required prior to submission to the regional or Central Office as provided for in §542.14(d) of this part. An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.]**

For example, the Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals, or when informal resolution is deemed inappropriate due to the issue's sensitivity.

Although not mandatory, inmates may attempt informal resolution of DHO decisions. See the Program Statement on Inmate Discipline and Special Housing Units.

**8. [ INITIAL FILING . §542.14**

**a. Submission . The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form ( BP-9), is 20 calendar days following the date on which the basis for the Request occurred.]**

P.S. 1330.13

December 22, 1995

Page 6

In accord with the settlement in Washington v. Reno , and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

[b. **Extension** . Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.]

Ordinarily, the inmate should submit written verification from staff for any claimed reason for delay.

If an inmate requests an Administrative Remedy form but has not attempted informal resolution, staff should counsel the inmate that informal resolution is ordinarily required. If the inmate nevertheless refuses to present a request informally, staff should provide the form for a formal Request. Upon receipt of the inmate's submission, the Coordinator shall accept the Request if, in the Coordinator's discretion, informal resolution was bypassed for valid reasons, or may reject it if there are no valid reasons for bypassing informal resolution.

[c. **Form**

(1) The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).]

P.S. 1330.13

December 22, 1995

Page 7

The following forms are appropriate:

? Request for Administrative Remedy, Form BP-9, is appropriate for filing at the institution;

? Regional Administrative Remedy Appeal, Form BP-10, is appropriate for submitting an appeal to the regional office;

? Central Office Administrative Remedy Appeal, Form BP-11, is appropriate for submitting an appeal to the Central Office.

[(2) The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each

unrelated issue. For DHO and UDC appeals, each separate incident report number must be appealed on a separate form. ]

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and

comprehensive attention to the issues raised.

**[(3) The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form. If more space is needed, the inmate may use up to one letter-size ( 8 1/2" by 11") continuation page. The inmate must provide an additional copy of any continuation page. The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response. Because copies of exhibits must be filed for any appeal (see § 542.15 (b) ( 3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.**

**(4) The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor). CCC inmates may mail their Requests to the CCM.]**

The correctional counselor shall submit the form promptly (ordinarily not later than the next business day) to the Clerk for processing.

**[d. Exceptions to Initial Filing at Institution**

**(1) Sensitive Issues . If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the**

P.S. 1330.13

December 22, 1995

Page 8

**Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.**

**(2) DHO Appeals . DHO appeals shall be submitted initially to the**

Regional Director for the region where the inmate is currently
located.]

See the Program Statement on Inmate Discipline and Special Housing
Units.

   **[(3) Control Unit Appeals** . **Appeals related to Executive Panel
   Reviews of Control Unit placement shall be submitted directly to
   the General Counsel.]**

See the Program Statement on Control Unit Programs.

   **[(4) Controlled Housing Status Appeals** . **Appeals related to the
   Regional Director's review of controlled housing status placement
   may be filed directly with the General Counsel.]**

See the Program Statement on Procedures for Handling HIV Positive
Inmates Who Pose Danger to Others.

   **9. [ APPEALS § 542.15**

   **a. Submission** . **An inmate who is not satisfied with the Warden's
   response may submit an Appeal on the appropriate form (BP-10) to
   the appropriate Regional Director within 20 calendar days of the
   date the Warden signed the response. An inmate who is not
   satisfied with the Regional Director's response may submit an
   Appeal on the appropriate form (BP-11) to the General Counsel
   within 30 calendar days of the date the Regional Director signed
   the response. When the inmate demonstrates a valid reason for
   delay, these time limits may be extended. Valid reasons for delay
   include those situations described in §542.14(b) of this part.
   Appeal to the General Counsel is the final administrative appeal.]**

These deadlines specify the date of the Appeal's receipt in the
regional office or the Central Office. The deadlines have been
made deliberately long to allow sufficient mail time. Inmates
should mail their Appeals promptly after receiving a response to
ensure timely receipt. Ordinarily, the inmate must submit written
verification from institution staff for any reason for delay that
cannot be verified through SENTRY.

P.S. 1330.13

December 22, 1995

Page 9

In many cases, courts require a proper Appeal to the General
Counsel before an inmate may pursue the complaint in court.

   **[b. Form**

   **(1) Appeals to the Regional Director shall be submitted on the
   form designed for regional Appeals (BP-10) and accompanied by one**

complete copy or duplicate original of the institution Request and response. Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal.

(2) An inmate may not raise in an Appeal issues not raised in the lower level filings. An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.

(3) An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page. The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal). The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).]

c. Processing . The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

10. [ ASSISTANCE §542.16

a. An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal. An inmate may also obtain assistance from outside sources, such as family members or attorneys. However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff .

b. Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English. Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.]

\* For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem. \*

11. [ **RESUBMISSION §542.17**

**a. Rejections** . **The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.**

**b. Notice** . **When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.]**

(1) Sensitive Submissions . Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate. Only a rejection notice will be provided to the inmate. However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2) Defects . Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects. Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and 15 calendar days at the Central Office.

(3) Criteria for Rejection . When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise. Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or problematic issue, such as medical treatment, sentence computation, staff misconduct, even though that submission may be somewhat untimely.

[c. **Appeal of Rejections** . **When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level. The Coordinator at that level may affirm the rejection, may direct that the submission be accepted**

at the lower level (either upon the

PS 1330.13

CN-03, 10/07/97

Page 11

inmate's resubmission or direct return to that lower level), or may accept the submission for filing. The inmate shall be informed of the decision by delivery of either a receipt or rejection notice.]

12. [ RESPONSE TIME §542.18. If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's

immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall

respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.]

The date a Request or an Appeal is received in the Administrative Remedy index is entered into SENTRY as the " Date Rcv", and should be the date it is first received and date-stamped in the Administrative Remedy Clerk's office. Notice of extension ordinarily is made via SENTRY notice.

13. REMEDY PROCESSING

a. Receipt . Upon receiving a Request or Appeal, the Administrative Remedy Clerk shall stamp the form with the date received, log it into the SENTRY index as received on that date, and write the "Remedy ID" as assigned by SENTRY on the form. Once a submission is entered into the system, any subsequent submissions or appeals of that case shall be entered into SENTRY using the same Case Number. The "Case Number" is the

purely numerical part of the "Remedy ID" which precedes the hyphen and "Submission ID."

\* All submissions received by the Clerk, whether accepted or
rejected, shall be entered into SENTRY in accordance with the

SENTRY Administrative Remedy Technical Reference Manual. \*

Sensitive issues, when the inmate claims that his or her safety or
well-being would be placed in danger if it became known at the
institution that the inmate was pursuing the issue, should be
withheld from logging in until answered and/or should be logged
into SENTRY with sufficient vagueness as to subject code and
abstract to accommodate the inmate's concerns.

P.S. 1330.13

December 22, 1995

Page 12

A Request should be submitted and logged in at the institution
where the inmate is housed at the time the inmate gives the
Request to the counselor or other appropriate staff member. If the
event(s) occurred at a previous institution, staff at that previous
institution shall provide, promptly upon request, any
investigation or other assistance needed by the institution
answering the Request. If an inmate is transferred after

giving the Request to a staff member, but before that Request is
logged in or answered, the institution where the Request was first
given to a staff member remains responsible for logging and
responding to that Request.

b. Investigation and Response Preparation . The Clerk or
Coordinator shall assign each filed Request or Appeal for
investigation and response preparation. Matters in which specific
staff involvement is alleged may not be investigated by either
staff alleged to be involved or by staff under their supervision.

Allegations of physical abuse by staff shall be referred to the
Office of Internal Affairs (OIA) in accordance with procedures
established for such referrals. Where appropriate, e.g., when OIA
or another agency is assuming primary responsibility for
investigating the allegations, the response to the Request or
Appeal may be an interim response and need not be delayed pending
the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all
relevant information developed in the investigation shall
ordinarily be supported by written documents or notes of the
investigator's findings. Notes should be sufficiently detailed to
show the name, title, and location of the information provided,
the date the information was provided, and a

full description of the information provided. Such documents and
notes shall be retained with the case file copy. When deemed
necessary in the investigator's discretion, the investigator may

request a written statement from another staff member regarding matters raised in the Request or Appeal. Requested staff shall provide such statements promptly. For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

c. Responses . Responses ordinarily shall be on the form designed for that purpose, and shall state the decision reached and the reasons for the decision. The first sentence or two of a response shall be a brief abstract of the inmate's Request or Appeal, from which the SENTRY abstract should be drawn . This abstract should be complete, but as brief as possible. The remainder of the response should answer completely the Request or Appeal, be accurate and factual, and contain no extraneous information. The response should be written to be released to any inmate and the general public under the Freedom of

P.S. 1330.13

CN-01, April 24, 1996

Page 13

Information Act (FOIA) and the Privacy Act . Inmate names shall not be used in responses, and staff and other names may not be used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and statutes shall be referred to in responses whenever applicable, including section numbers on which the response relies.

d. Response Time Limits . Responses shall be made as required in Section 11 of this Program Statement.

e. Index Completion . When a response is completed, the Clerk shall update SENTRY in accordance with the SENTRY Administrative Remedy Manual and the instructions in Attachment A. Particular attention should be paid to updating the status date, code, and reason, and to making any changes to the subject code and abstract indicated by the Coordinator or by the response drafter. The abstract shall be taken from the response's first paragraph. Abbreviations may be liberally used, as long as they are easily understood, to allow as complete a description of the issue in the 50 characters allotted. For consistency, the Administrative Remedy Coordinator shall approve the closing entry, including the subject codes, status code and reason, and abstract before the closing entry is made by the Clerk.

f. Response Distribution . For an institution response, one copy of the complete Request and response shall be maintained in the Warden's Administrative Remedy File together with all supporting material. Three copies shall be returned to the inmate. An inmate who subsequently appeals to the regional or Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at the regional office. One copy shall be sent to the Warden at the original filing location. The remaining two copies shall be returned to the inmate; one to submit in case of subsequent appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be returned to the inmate. One copy will be retained in the Central Office Administrative Remedy File, one copy will be forwarded to the regional office where the Regional Appeal was answered, and one to the Warden's Administrative Remedy File at the original filing location.

* g. <u>File Maintenance</u> . The Warden's Administrative Remedy File and Administrative Remedy Files at the Regional Offices and Central Office shall be maintained in a manner that assures case files are readily accessible to respond to inquiries from Federal Bureau of Prison staff, inmates and the public. Institutions shall file Regional and Central Office response copies with the inmate's institution submission copy. Regional offices shall file copies of Central Office responses with the inmate's Regional Appeal file. Each location shall maintain copies of supporting material and investigation notes with the case file. *

P.S. 1330.13

December 22, 1995

Page 14

When a Regional or Central Office Appeal was not preceded by a lower level filing, the institution and regional copies shall be filed at the institution and region having responsibility for the inmate at the time of response.

To provide information and feedback, Wardens and Regional Directors are encouraged to route response file copies from

subsequent appeal levels to the Coordinator and the appropriate department head or person who investigated and drafted the response at their respective levels.

14. [ **ACCESS TO INDEXES AND RESPONSES** §542.19. **Inmates and members of the public may request access to Administrative Remedy indexes and responses, for which inmate names and Register Numbers have been removed, as indicated below. Each institution shall make available its index, and the indexes of its regional office and the Central Office. Each regional office shall make available its index, the indexes of all institutions in its region, and the index of the Central Office. The Central Office shall make available its index and the indexes of all institutions and regional offices. Responses may be requested from the location where they are maintained and must be identified by Remedy ID**

Case 1:00-cv-01449-WWC    Document 13    Filed 11/22/2000    Page 43 of 52

**number as indicated on an index. Copies of indexes or responses may be inspected during regular office hours at the locations indicated above, or may be purchased in accordance with the regular fees established for copies furnished under the Freedom of Information Act (FOIA).]**

At present, fees are detailed in 28 CFR § 16.10, which specifies a charge of $.10 per page duplicated and no charge for the first 100 pages. Staff shall forward funds received for purchase of index and response copies to the FOIA/Privacy Act Section, Office of General Counsel, Central Office.

Any location may produce its index or that of another location by making the appropriate entries on a SENTRY retrieval transaction, and specifying the "SAN" (sanitized) output format.

15. <u>RECORDS MAINTENANCE AND DISPOSAL</u>

a. <u>Disposal Authority</u> . The authority for Administrative Remedy records disposal is the " job number" NC1-129-83-7 provided by the National Archives.

b. <u>Administrative Remedy Indexes</u> . SENTRY Administrative Remedy indexes shall be maintained in computer accessible form for 20 years, then destroyed. Pre-SENTRY indexes shall be maintained at the site of creation for 20 years, then destroyed.

c. <u>Administrative Remedy Case Files</u> . Administrative Remedy Case Files shall be destroyed three full years after the year in which the cases were completed (i.e., response completed). For cases submitted since implementation of the SENTRY module ( July 1990), at the end of each calendar year (beginning at end of

PS 1330.13

(CN-02), April 14, 1997

Page 15

1993), run SENTRY index retrieval transactions to identify the

lowest case number for cases <u>answered</u> (status = cl* and status date in the appropriate range) during the calendar year ended three years previously. Cases below that number must be destroyed. Thus, cases answered in 1990 would be destroyed at the end of 1993; cases answered in 1991 would be destroyed at the end of 1994, etc.

To identify the lowest case number for cases answered during a given year, it may be necessary to check indexes with "Date Received" in the year in question as well as those with "Date Received" in the previous year.

Cases maintained under the pre-SENTRY numbering and filing system should be destroyed according to the following schedule:

YEAR OF CASE # DESTROY AT END OF

94 1998

95 1999

96 2000

97 2001

\* \*

16. <u>INSTITUTION SUPPLEMENT</u> . Each Warden shall forward a copy of any Institution Supplement developed to implement this Program Statement to the Regional Administrative Remedy Coordinator and to the National Inmate Appeals Administrator in the Central Office.

\s\

Kathleen M. Hawk

Director

Back to top

*1999 00744*

*FCI-A*
*Nero*
*BBW*
*BBH*

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

REYNALDO DE LA CRUZ,

      Plaintiff

      vs.

W. BARTOLO, ET AL.,

      Defendants

:  No. 4:CV-99-1412

:  (Complaint Filed 8/09/99)

:  (Judge Muir)

**FILED**
WILLIAMSPORT, PA

SEP 1 2 2000

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

**ORDER**

September 12, 2000

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

    Plaintiff Reynaldo De La Cruz, while a prisoner confined at the Allenwood Federal

Correctional Institution, White Deer, Pennsylvania (FCI-Allenwood),[1] filed this Bivens-

styled[2] action against defendants pursuant to 28 U.S.C. § 1331.  He proceeds pro se and

in forma pauperis.

    The defendants, and their respective positions, as identified in the complaint are the

following FCI-Allenwood employees: W. Bartolo, Unit Counselor; Lt. Shank, Investigating

Lieutenant; Lt. Matthews, Segregation Supervisor; Officers Eckroth, T. Halcuk, Henniger,

Wenner, and Wolff, "Seg. Unit;" and Dr. Bonner, Psychologist.  In the complaint, De La

---

    [1]  De La Cruz is currently confined at the Federal Correctional Institution, Raybrook,
New York (FCI-Raybrook).

    [2]  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388
(1971).  Bivens stands for the proposition that "a citizen suffering a compensable injury to a
constitutionally protected interest could invoke the general federal question jurisdiction of
the district court to obtain an award of monetary damages against the responsible federal
official." Butz v. Economou, 438 U.S. 478, 504 (1978).

Cruz alleges that on March 3, 1999, Bartolo the unit counselor was informed that De La Cruz and his cellmate Montoya had had an altercation and that De La Cruz possessed a weapon. When Bartolo searched De La Cruz he found a sock stuffed with a lock and two canned goods, which plaintiff stated he possessed for his protection. According to plaintiff both he and Montoya were then placed in the segregated housing unit (SHU) pending an investigation. At a disciplinary hearing held on March 8, 1999, plaintiff states that he was found guilty and a disciplinary transfer was recommended.

De La Cruz next alleges that on July 4, 1999, defendant Wolff "came to his cell and made a statement which contained Montoya's name, but he did not comprehend in that he does not speak or understand English." (Doc. 1, Compl. at 4.) Thereafter, Montoya was placed in his cell, an assignment plaintiff alleges was made by defendant Wenner. He contends that the following events then took place:

> Shortly thereafter, Officers Henninger and Halcuk approached De La Cruz' cell while feeding the bottom range. They witnessed, according to the report, De La Cruz 'forcibly backed into the cell door." They observed Montoya strike De La Cruz on the forehead with a closed fist, grab him in a head-lock and wrestle him to the bottom bunk. They also observed Montoya slamming De La Cruz' head against the wall as they entered ... with Officer Wolff.

(Id. at 5.) He also asserts that although there were at least four officers assigned to the unit who witnessed the assault, they made no attempt to intervene until other staff arrived. As relief he seeks injunctive and monetary relief.

On October 26, 1999, defendants filed a motion to dismiss and for summary judgment. On November 16, 1999, defendants filed a brief, exhibits, in-camera documents, and a separate statement of material facts in support of the motion. By order dated November 24, 1999, we directed plaintiff to file a brief and materials in opposition to the motion. Subsequently, we granted plaintiff two extensions of time in which to file his response to the pending motion, the most recent of which granted him until August 12,

2

2000 to file an appropriate response. When plaintiff again failed to file an appropriate response, by order dated July 14, 2000, we directed him to do so within fifteen days of the date thereof and forewarned him that if he failed to file a brief and materials in opposition, we would consider dismissing the complaint pursuant to Rule 41(b) for failure to prosecute and comply with a court order. Plaintiff filed a brief in opposition to the motion on August 16, 2000. A reply brief was filed on August 26, 2000. The motion is now ripe for disposition.

As a threshold matter, defendants argue that the complaint should be dismissed because De a Cruz has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Conversely, plaintiff, citing to Patsy vs. Board of Regents, 457 U.S. 496 (1992), argues that he "is not required to exhaust administrative remedies prior to instituting an action under Title 42, U.S.C. § 1983." (Doc. 35, Pl.'s Opp'n Br. at 4.) Further, he states that there is no exhaustion rule for damages and, therefore, his failure to exhaust "does not automatically require this Court to dismiss this case." (Id.) We are of the view that defendants' position regarding plaintiff's failure to exhaust is well taken and dispositive of this case.[3]

In regard to the exhaustion of administrative remedies, 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner

---

[3] Because we find this issue dispositive, we will not address the merits of the plaintiff's claims. See Nyhuis vs. Reno, 204 F.3d 65, 78 (3d Cir. 2000) ("Since the Magistrate Judge, having properly dismissed the action for failure to exhaust, should not have reached the merits of Nyhuis's claim, that portion of the District Court's decision will be vacated."); Ahmed vs. Sromovski, 103 F. Supp.2d 838, 842, n.15 (E.D. Pa. 2000) ("Because,.... I determine that plaintiff has failed to exhaust his administrative remedies as required by the PLRA, I will not address the merits of plaintiff's claims.").

3

confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted.

"This provision makes no distinction between an action for damages, injunctive relief, or both." Fortes vs. Harding, 19 F. Supp.2d 323, 325 (M.D. Pa. 1998). Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. See Nyhuis, 204 F.3d at 67 ("[W]e hold that the PLRA [Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996)] amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory – whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action."); Rankins vs. Murphy, Civ. A. No. 98-1669, 1998 WL 767441, at * 1 (E.D. Pa. November 3, 1998). The instant complaint concerns prison conditions. See Hanson vs. Chesney, 37 F. Supp.2d 399, 401 n.4 (E.D. Pa. 1999) (concluding that claim that corrections officers failed to follow prison procedure and, consequently, to protect plaintiff against attack by another inmate "is an 'action with respect to prison conditions' requiring exhaustion under § 1997e(a)."); Rivers vs. Horn, No. Civ. A. 00-3161, 2000 WL 1022890, at *1 (E.D. Pa. July 18, 2000) (dismissing complaint which included claim that plaintiff's safety was endangered by his being confined with a violent cellmate who later assaulted him for failure to exhaust pursuant to § 1997e(a)); Jones vs. Vaughn, No. Civ. A. 00-1622, 2000 WL 565214, at *1 (E.D. Pa. May 2, 2000) (dismissing complaint asserting claim for failure to protect from assault by another inmate for failure to exhaust pursuant to § 1997e(a)).[4]

The BOP has established a multi-tier Administrative Remedy Program whereby a

---

[4] Although these cases addressed complaints brought pursuant to 42 U.S.C. § 1983, their holdings apply to the instant Bivens action. See Booth vs. Churner, 206 F.3d 289, 291 (3d Cir. 2000) (" § 1997e(a) treats Bivens actions and § 1983 actions as functional equivalents.").

federal prisoner may seek review of any aspect of his imprisonment, subject to certain exceptions not applicable here. See 28 C.F.R. §§ 542.10-542.19. "This program applies to all inmates confined in institutions operated by the Bureau of Prisons, to inmates designated to Community Corrections Centers (CCCs) under Bureau of Prisons' responsibility, and to former inmates for issues that arose during their confinement but does not apply to inmates confined in other non-federal facilities." Id. at § 542.10.

The program provides that, with certain exceptions not applicable here, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request For Administrative Remedy." Id. at § 542.13(a). Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within "20 calendar days following the date on which the basis for the Request occurred." Id. at § 542.14(a). If a valid reason for delay is given, an extension of the filing time may be granted. Id. at 542.14(b). The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond. Id. at § 542.18.

If an inmate is not satisfied with the Warden's response, it may be appealed on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. Id. at § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response. Id. "When the inmate demonstrates a valid reason for delay, these time limits may be extended." Id. The Regional Director has 30 calendar days to respond and the General Counsel has 40 calendar days in which to respond. Id. at § 542.18.

The response time provided for at each level may be extended in writing "once by

20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level." Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

In support of their motion to dismiss and for summary judgment, defendants submit the affidavit of Douglas S. Goldring, Attorney-Advisor employed by the United states Department of Justice, Federal Bureau of Prisons, and assigned to FCI-Allenwood. (Doc. 20, Defs.' Ex. 10, Affidavit of Douglas S. Goldring.) In his affidavit, Goldring states that no administrative remedy appeal is considered exhausted until it is rejected by the Central Office. (Id., ¶ 5.) Further, he states that the computerized records maintained by the BOP concerning administrative remedy retrieval shows that plaintiff has filed only four administrative remedies, none of which concern his placement with Montoya. (Id., ¶¶ 6-8; Attach. 2, Administrative Remedy Generalized Retrieval Computer Report for De La Cruz.) This documentary evidence shows that plaintiff pursued his disciplinary misconduct stemming from the March 5, 1999 possession of a weapon charge to final review. It also shows that the only other administrative remedy appeals were to the regional office, filed on July 14, 1999, concerning a DHO report, and one to the Warden on July 16, 1999, concerning a request for a transfer. Neither of these administrative remedy requests were pursued to the next level of review. Plaintiff himself concedes that he has failed to exhaust his administrative remedies in his brief in opposition, when he states that his failure to do so does not automatically require the court to dismiss his action. (Doc. 35, Pl.'s Opp'n Br. at 4.)

Plaintiff's arguments that exhaustion is not required under the authority of Patsey vs. Board of Regents, 457 U.S. 496 (1982); Bivens, 403 U.S. 388 ; McCarthy vs. Madigan, 503 U.S. 140 (1992); and Pratt vs. Hurley, 79 F.3d 601 (7th Cir. 1996) are unavailing. To the

extent that these authorities were decided prior to the passage and effective date of the PLRA, they do not control the instant action. Furthermore, it was clear that both prior to and after the Supreme Court's <u>McCarthy</u> decision, federal prisoners who sought both monetary and injunctive relief were required to exhaust administrative remedies prior to coming to federal court. <u>See</u> Ghana vs. Holland, No. (7-7043, 2000 WL 1224729, at *6-7 (3d Cir. Aug. 29, 2000); Veteto vs. Miller, 794 F.2d 98, 100 (3d Cir. 1986); Young vs. Quinlan, 960 F.2d 351, 356 n.8 (3d Cir. 1992). De La Cruz' complaint seeks injunctive and declaratory as well as monetary relief and hence is a mixed complaint subject to the exhaustion requirement in effect prior to passage of the PLRA. Finally, there can be no question in light of the decision by the Court of Appeals for this circuit in <u>Nyhuis</u>, that under § 1997e(a), exhaustion prior to filing suit is required in all cases, no matter the relief sought. <u>See</u> Nyhuis, 204 F.3d at 67.

Clearly the claims asserted in the instant action are unexhausted and the complaint is subject to dismissal on that basis.

NOW, THEREFORE , IT IS ORDERED THAT:

1.  The motion to dismiss and for summary judgment (Doc. 14) is granted in accordance with paragraph 2 of this order.

2.  The complaint is dismissed without prejudice pursuant to 42 U.S.C. Section 1997e(a) for failure to exhaust administrative remedies.

3.  The Clerk of Court is directed to close this case.

4.  Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

_____
MUIR
United States District Judge

MM:mcs

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

M. ASH-SHARIEF AL'ASKARI,    :
        Plaintiff     :
                      :
         v.         :     Civil No. 1:CV-00-1449
                      :     (Judge Caldwell)
KATHLEEN HAWKES, et al.,    :     (Magistrate Judge Smyser)
        Defendant     :

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on November 22, 2000, she served a copy of the attached

**EXHIBITS TO BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

M. Ash-Sharief Al'Askari
Reg. No. 34819-066
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

SHELLEY L. GRANT
Paralegal Specialist