JUDGE'S COPY

1.

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PA

M. ASH-ASHARIEF Al'ASKARI,
    PLAINTIFF,

V.

Civil No. 1:CV-00-1449
(Judge Caldwell)
(Magistrate Judge Smyser)

FILED
HARRISBURG, PA

FEB 7 2001

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

**NUNC PRO TUNC BRIEF AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' 2ND MOTION TO DISMISS**

On 21 Jan., 01, the plaintiff submitted to this court and the defendants an affidavit in support of his objections to the defendant's 2nd motion to dismiss. At this time the plaintiff submits hereunder his brief and memorandum in support of his Affidavit.

The defendants no longer maintains that the plaintiff did not exhaust his Administrative Remedy complaints. This fact is documented in the plaintiff's previous submissions. In **Nyhuis**, the Court recognized, as do this Plaintiff, the neccessity of administrative exhaustion considerations. In that these considerations include avoiding premature interruption of the administrative process whereby giving the agency the opportunity to correct its own errors. **U.S. v. Nyhuis, 204 F3d 65, 75 (3rd Cir. 2000).**

Just as an inmate may interrupted the Administrative Remedy Process by filing his or her complaint to the court "prematurely", prison guards and staff may in fact "interrupt" the Process's accessableness by not allowing the inmate a pen or pencil "due to the security needs of the institution", guards and staff may interrupted the timely filing of a complaint by strapping an inmate to a bed or chairs indefinitely disallowing him access to the process in forms of inmate assistance, wri-

ting paper, procedure manuals etc. Interruptions and interference with access is caused by responsible persons not making themselves available by not being able locate them or they are "to busy right now" address the matter ad infinitum. The people who design the Administrative Remedy Procedure System are in Washington, D.C. creating system in a vacuum, the defendants Hursh and the like are the Administrative Remedy Procedure System walking and talking. If the Hurshes and the like are neccessary means to access the system than the the system must neccessarily provide a means other than the Hurshes; and that is The Sensitive Remedy Request System. The defendants augumentatively exclaim that if defendant Hursh was the problem itself then the "informal remedy" could have been process by "another guard". But there is no "other guard" to do somebody elses job. In a densely bureaucratized system reinforced by a pugnacious prison guard union even the warden himself is afraid to step outside of his "job description". Asking another employee to do another job discription is not how the system walks and talks in spite of the system designers. This probably is the main cause of inmates filing "premature" in the courts. Access becomes an exercise in Futility when the defenants complaint that the System was not used when they interfere with the use of the system as the defendants attempted in this case at hand.

    The 3rd Circuit in 2 cases concerning exhaustion of administative remedy was very long winded in justifying its incorrect interpretation of the Futility Doctrine in **42 U.S.C. §1997(e)(a)**. The decision in those cases by that Court was a bad decision. CF. **McCarthy v. Madigan**, 117 **L.ED2d 291(1992)(Exhaustion not required when seeking Biven's damages).** The Court presently has before it the question presented in the 3rd Circuit cases' **Nyhius and Booth** on this very point of futility and exhaustion. Necessarily bringing in to question this Circuit's statutory interpretation of the same. See **Booth v. Churner**, 99-1964 6/5/00.

2

In their initial motion to dismiss for lack of jurisdiction, the defendants submitted an affidavit to this court that Mr.Al'Askari had not exhausted his Formal Administrative Remedy process previously. In their successive motion to the same effect, the defendants jettisoned that affidavit to reel in a new affidavit contradicting the old one. Now, it is declared therein that Mr.Al'Askari is "creating" a factual issue or, alternately, his allegation, unlike theirs, is "unsupportable". Contrarily, however, defendant Hursh's own affidavit and exhibits support the fact that (1) Mr.Al'Askari understands the Formal Administrative Remedy Procedure contrary to Robin gregg's assertion to the opposite. Defendant Hursh affirms in her affidavit that Mr.Al'Askari requested of her, all the requisite forms to initial Formal Resolutions from the beginning, and none of them were processed or, "coordinated" by Robin Gregg. Robin Gregg had no hand in the process himself whatsoever at any time. This fact is borne out in the defendant's subsequent admission that Robin Gregg is not a "coordinator", but a "trainer".
(2) defendant Hursh admits in her affidavit, acts committed or omitted on her part is the cause of Mr.Al'Askari being subjected to Constitutional violations of the law by the defendants. further, per exhibits submitted by defendant Hursh with her affidavit, it is clearly recorded that, Mr.Al'Askari requested a BP-9. This BP-9 was submitted as a "Sensitive" Administrative Remedy request directly to the Warden himself specifically against defendant Hursh herself. (3) To suggest that if defendant Hursh was unavailable he, Mr.Al'Askari, could of had another staff do it for him. Speculation is sterile in the face of defendant Hursh's own submission of her log-book, logging her admission into the hole. The only name on it is hers, no other staff was available to Mr.Al'Askari in the period in question.

Per administrative Remedy Program procedures, there is established a procedure for inmates to submit "Sensitive" remedy requests, e.g., fear of retaliation, to prevent disclosure of identity, reporting acts, their commission or omission, by corrupt staff and or sensitive. It is not for staff to take it upon themselves to determine and or interpret what is sensitive inasmuch as it is given that the policy have a plain and ordinary meaning and non-technical terminology. To hold otherwise subject the policy to a Constitutionally vagueness objection.

In conclusion, it is quite patent from all the submissions in this matter up to this point that the plaintiff supported each and every allegation with independant evidence and documentation from all parties, unlike the defendants jettisoning one claim after another argumentatively.

### 99-1962 Collins Entertainment Inc. v. South Carolina Law Enforcement Division

*Forfeiture—Seizure and destruction of illegal gaming machines—Due process.*

Ruling below (*South Carolina v. 192 Coin-Operated Video Game Machines*, S.C., 338 S.C. 176, 525 S.E.2d 872 (2000)):

S.C. Code Section 12-21-2712, which states that "any . . . device pertaining to games of chance prohibited by § 12-21-2710 must be seized by any officer of the law and at once taken before any magistrate . . . who shall immediately examine it, and [if it is illegal] he shall direct that it be immediately destroyed," is consistent with due process principles when construed to provide that magistrate's examination of machine includes opportunity for owner to be heard on issue of machine's legality; owner of video gaming machines in this case had opportunity to be heard in court and conceded their illegality in affidavit and, therefore, was not denied due process by seizure and destruction of machines; pre-seizure hearing is not required in civil forfeiture case.

Question presented: Does state procedure permitting seizure and destruction of private property without any opportunity—before or after seizure—for property owner to present evidence and to challenge state's factfinding violate Fourteenth Amendment's Due Process Clause?

Petition for certiorari filed 6/7/00, by Bruce S. Rogow and Beverly A. Pohl, both of Ft. Lauderdale, Fla.

### 99-1963 Florida v. Shadler

*Exclusionary rule—Search incident to arrest predicated on erroneous entry on driver's license database.*

Ruling below (Fla., 66 CrL 287 (2000)):

Erroneous entry in database maintained by Florida Division of Driver Licenses is law enforcement error to which Fourth Amendment exclusionary rule applies, and, therefore, evidence discovered when defendant was arrested for driving with license that was erroneously listed as suspended must be suppressed.

Question presented: Does good-faith exception espoused in *United States v. Leon*, 468 U.S. 897 (1984), apply to circumstances in which administrative arm of government agency that collects computer data and is used by law enforcement agencies as source to check information provides erroneous information to law enforcement officer, resulting in invalid arrest?

Petition for certiorari filed 5/30/00, by Robert A. Butterworth, Fla. Atty. Gen., Carolyn M. Snurkowski, Asst. Dpty. Atty. Gen., and Rebecca Roark Wall, Senior Asst. Atty. Gen.

### 99-1964 Booth v. Churner

*Prisons and jails—Exhaustion of administrative remedies—Futility.*

Ruling below (3d Cir., 206 F.3d 289 (2000)):

As held in *Nyhuis v. Reno*, 204 F.3d 65, 66 CrL 443 (3d Cir., 2000), requirement of 42 USC 1997e(a) that prisoner seeking to bring prison-conditions suit under federal law must first exhaust "such administrative remedies as are available" does not have futility exception, and, therefore, prisoner who seeks only money damages in 42 USC 1983 claim alleging excessive force must exhaust administrative remedies even though they do not provide for such relief.

Question presented: Does 42 USC 1997e(a), which, as amended by Prison Litigation Reform Act, provides that prisoner must exhaust "such administrative remedies as are available" before bringing federal action, require prisoner seeking only monetary damages to exhaust administrative remedies if monetary damages are not available under applicable administrative process?

Petition for certiorari filed 6/5/00, by Nancy Winkelman, Ralph N. Sianni, and Schnader, Harrison, Segal & Lewis LLP, all of Philadelphia, Pa.

### 99-1965 Townes v. United States

*Military prosecutions—Court martial composed of enlisted members—Harmless error.*

Ruling below (C.A.A.F., 52 M.J. 275 (2000)):

Although military judge that empaneled court-martial consisting of enlisted personnel as well as officers failed to comply strictly with UCMJ Art. 25(c)(1) by not obtaining on record defendant's personal request that enlisted personnel serve on panel, facts that defendant was advised of his rights concerning forum and that defense counsel told judge in defendant's presence that defendant desired to be tried by panel consisting of officers and enlisted personnel demonstrate substantial compliance with statute; error neither deprived court of jurisdiction nor affected defendant's substantial rights and, therefore, was harmless.

Question presented: Did court below err in holding that court-martial composed of enlisted members had jurisdiction to try defendant in case in which there was no personal request for trial by enlisted members as required under UCMJ Art. 25?

Petition for certiorari filed 6/6/00, by Lt. Cmdr. R .C. Klant and Lt. Cmdr. M. J. Wentworth, both of U.S. Navy-Marine Corps App. Rev. Activity, Washington Navy Yard, D.C.

### 99-1967 Francolino v. New York

*Judges—Selection of trial judge—Bias.*

Ruling below (*New York v. Ass'n of Trade Waste Removers of Greater New York*, N.Y. App. Div., 1st Dept., 701 N.Y.S.2d 12, 267 A.D.2d 137 (1999)):

Process by which trial justice was assigned to defendants' case complied with applicable rules and was in no way prejudicial to defendants; defendants' claims of judicial bias and interference were not preserved for review; if court were to review those claims, it would find that trial court's questioning of witnesses was not overly intrusive and that its rulings and comments did not prejudice defendants, particularly in light of small number of instances of which defendants complain and length of trial; court gave correct and balanced jury instructions on burden of proof.

Questions presented: (1) When, as alleged in this case, prosecutor directly or indirectly selects judge to preside over criminal case, is defendant's right to due process violated and should prejudice be presumed? (2) If prejudice is not presumed and something more than prosecutor's selecting judge is required to obtain reversal of conviction on direct appeal, must it be showing of biased rulings or conduct by judge that would invalidate conviction in any event notwithstanding whether prosecutor had selected judge or may it be lesser or different showing than such "actual prejudice"? (3) Did prosecutor's selection of judge deny defendants due process in this case in light of judge's allegedly pro-prosecution conduct from arraignment through sentencing? (4) Did trial court dilute standard of proof beyond reasonable doubt by charging jury, over objection, that it is their function "to determine reasonable probabilities arising from the case after carefully analyzing and weighing the testimony of each witness and all other evidence in the case"?

Petition for certiorari filed 6/7/00, by Diarmuid White and Brendan White, both of New York, N.Y.

CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY THAT I HAVE SERVED A COPY OF THE FOREGOING BRIEF AND MEMORANDUM UPON THE U.S. ATTORNEY FOR THE DEFENDANTS WHOSE ADDRESS IS:

> U.S. Department of Justice
> U.S. Attorney Ofc.,
> M.D. OF PA
> P.O. Box 11754
> Harrisburg, PA 17108

on 3 Feb., 01 and deposited it in the prison mailbox.

_M. Ash-Sh. Al'Aska_