IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

M. Ash-Sharief Al' Askari

    Plaintiff,          *

v.                                *

                                 Civil No.1:CV-00-1449
                               (Judge Caldwell)
                          *   (Magistrate Judge Smyser)

Kathleen Hawks, et.al.,
                               *

    Defendants.
\*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S**
**REPORT AND RECOMMENDATION**

### INTRODUCTION

Now comes M. Ash-Sharief Al' Askari ['Al' 'Askari] plaintiff pro-se and says that the following facts, information and conclusions is submitted as his objections to the Magistrate's Report and Recommendation filed with this court 13 March, 2001.

### ITINERARY

Al' Askari filed with this court a Bivens complaint 14 August, 2000 against the named defendants, the cause of which is well documented in the record of the case sub judice.

### DISCUSSION

The defendants have moved this court to dismiss Al' Askari's action alleging that this court does not have jurisdiction inasmuch as it is alleged, that Al' Askari has not "exhausted administrative remedy". Al' Askari submitted with this court a brief and memorandum objecting to the same. As a consequence, this court reports and recommends that this action be dismissed pursuant to a summary judgement for the defendants.

## STATEMENT OF FACT

1. The defendants in their initial response in this action represented to this court that Al' Askari's complaint should be dismissed for not "exhausting administrative remedies". This representation proved to be a false allegation of the defendants wherein Al' Askari in his objection to said representation appended to his opposition to their motion copies of administrative remedy forms 9, 10, and 11, that the defendants alleged not to have been filed or exhausted with them.

2. Subsequent to that, the defendants move this court to submit a second brief and memorandum under Civil rule 56. In this second motion the defendants altered their position and allegations. The defendants therein represented that Al' Askari filed administrative remedies with them but Al' Askari failed to "exhaust" them. Upon Al' Askari submitting to this court proof that he submitted the requisite administrative remedies the defendants, again, altered their position. They no longer alleged that Al' Askari did not first submit the complaint contained in his Bivens complaint nor any longer contend that Al' Askari did not "exhaust" these complaints administratively but not allege argumentatively that the remedies were "rejected". Rejected by reason of failure to exhaust "informal Remedy". The argument leads, accordingly, that is the inmate does not make use of the "Informal Remedy" procedure then the inmate is not allowed any formal remedy access. This is no more than the tail wagging the dog.

3. Al'Askari's position has been consistantly set forth in all his submission with the court, and that is, the policy, as recited by this court in its R and R provide for formal and informal resolution. One of the components of the Informal Remedy Procedure is the Sensitive BP-9. Neither the defendants nor this court at any time acknowledged the existence of the Sensitive BP-9.

Defendants has mischaracterized my original submission of a Sensitive BP-9 as a "Formal" BP-9. A Sensitive BP-9 is an Informal Remedy Resolution per this same policy. As submitted previously by Al'Askari, the policy in question provide for Sensitive BP-9. When the complaint itself is against the inmate's counselor him or herself inasmuch as it is the counselor that must draft the complaint per policy, inmates are not <u>allowed</u> to write up their own Informal complaints. This must be done for them per policy. see **Defendant's Institution Policy ALM 1330.13B(4.B)**

4. Thus, the same complaint defendant Hursh would write on an "Informal Remedy" against herself by Al'Askari, Al'Askari <u>submitted</u> on a Sensitive BP-9. Per policy, the "Sensitive" BP-9 is in purpose and utility an Informal Remedy request. said policy does not <u>allow</u> staff to deny access to a Sensitive BP-9 as was done by the defendants. By reason of such, the defendants did not have any agency <u>discretion</u> to reject Al'Askari's Sensitive BP-9. This was my main complaint on subsequent requests for remedial resolution on the BP-10 and BP-11: that the Warden abused his discretion in not allowing Al'Askari to file a Sensitive BP-9 against defendant Hursh, who, at this time, was the coordinator of the remedy procedure as evidenced in Al'Askari's Traverse.

5. This court's opinion in its R and R, page 9, clearly evidence what the defendants consistantly denied, i.e., the filing of a complaint agaainst defendants Hursh and Goldring concerning my legal property being confiscated and destroyed by them. This court goes on to opinion that Al'Askari file a "Request for Administrative Remedy" and that the "Allenwood Authorities rejected this complaint on the basis that Al'Askari had failed to first attempt an informal resolution of the issue prior to pursuing formal relief".

-3-

That is factually untrue. In Al'Askari affidavits and documetation to this court, Al'Askari consistantly established that he originally filed a Sensitive BP-9, which this court is wrongly characterizing as a "Formal Remedy Request". A Sensitive 9 is an informal resolution, per policy. Allenwood authorities are not invested with discretion to disallow inmate access to a Sensitive BP-9. Allenwood authorities is not invested with the discretion to equate a Sensitive BP-9 with a Formal Administrative Remedy. There is no functional distinction per policy between an Informal Remedy and a Sensitive BP-9. This court is reducing all facts to "labels". The defendants have not denied at anytime in this case sub judice that Al'Askari has not originally filed a Sensitive BP-9 before filing his Formal remedy request, as alleged and documented by Al'askari in his affidavits and exhibits. The court has stated in its R and R, page 9, line 21, that the "B.O.P. has no further filings on the matter." but the B.O.P. has not made any filings of copies of any of the complaints that were allegedly rejected. Neither the Formal ones nor the Informal one-the Sensitive BP-9!

6. Notwithstanding, the BOP's rejection of Al'Askari's Formal Administrative Remedy are now irrebuttable as presumed by this court. Nor does the policy in question establish such presumption. Inmates have a right to call into attention the intervention of higher authority when the rejection of a complaint is commited in bad faith, incorrect in its allegations providing the <u>basis</u> of the rejection or if the rejection is not according to policy. Further, the policy provide for an inmate to also reject decisions reached in the Remedy Request, e.g., if the remedy requested is not adequate the inmate may reject it by complaining to his higher ups. There is no policy by the B.O.P. that authorizes the rejection of <u>properly filed</u> Sensitive BP-9. see <u>Plaintiff's Traverse Exhibits</u>.

-4-

7.  This court alleges that Al'Askari's administrative Remedy Request to the Regional office was rejected "because Al'Askari submitted two issues in a single form and was instructed to resubmit two forms." As stated above, an inmate has a right to appeal a rejection wherein the rejection is based upon an improper consideration. Specifically, it is not true that my appeal to the regional office consisted of "2 incidents." The incident complained was 1 single incident, event, transaction commited by three persons, the defendants themselves. the court must be well familiar with an indictment or a complaint alleging different counts and violations emanating from a single incident! As such the court litgates or prosecutes under a single indictment or complaint. Al'Askari correctly filed a single Administrative Remedy Form against one incident involving himself and the defendants. Staff rejections are per se appealable. Al'Askari exhausted all remedies. Al'Askari's argument is and remains that the defendants cannot order a complaintant to correct a socalled formal or technical defect or form where there is actually no such formal or technical error or defect procedurally or substantially. In simple terms, exhaustion is not required where the challenge is to the adequacy of the B.O.P.'s Administrative Remedy procedure itself, such that the question of the adequacy of the Administrative Remedy is for all practical purposes identical with the merits of Al'Askari's lawsuit. <u>Barry v. Barchi</u>, 61 L.Ed.2d 365 (1979). Alternatively, an agency may be compatant to adjudicate the issue presented but lack authority to grant the type of relief requested. <u>McNeese v. Board of Education</u>, 10 L.Ed. 2d 622 (1963). Al'Askari is not required to exhaust B.O.P.'s internal grievance procedure before initiating a Bivens action solely for money damages. Therefore, it is improper for federal courts to dismiss Al'Askari's action for lack of "exhaustion". In <u>McCarthy v. Madigan</u>, 117 L.Ed 2d (1992), per curiam, "section 1997e is not only inapplicable

-5-

to Bivens claims but by its own terms-cuts against respondants' claim that the particular procedures now at issue need be exhausted."

## CERTIFICATE OF SERVICE

I hereby certify and declare that a true and accurate copy of the foregoing motion of plaintiff's objections was sent by regular U.S. mail on this 15th day of March, 2001, to make service on the United States Attorney for the Middle District of Pennsylvania, P.O.Box-11754, Harrisburg, Pennsylvania 17108-1754.

Respectfully Submitted,

M. Ash-Sharief Al'Askari
Fed.Reg.No.34819-066
FCI-Allenwood
P.O.Box-2000
Whitedeer, PA. 17887

-6-



U. S. Department of Justice

Federal Bureau of Prisons

NUMBER: ALM 1330.13B

DATE: August 26, 1997

SUBJECT: Administrative Remedy Procedure for Inmates

*Federal Correctional Complex*
*Federal Correctional Institution - Allenwood*
*White Deer, PA 17887*

# Institution Supplement

1. **PURPOSE:** To provide procedures for the informal and formal resolution of inmate complaints.

2. **DIRECTIVES AFFECTED:**

   A. Directives Rescinded

   Institution Supplement ALM 1330.13A, Administrative Remedy Procedure for Inmates, dated September 9, 1996.

   B. Directives Referenced

   Program Statement 1330.13, Administrative Remedy Procedure for Inmates, dated December 22, 1995.

   Technical Reference Manual 004.01, SENTRY Administrative Remedy Manual, dated June 1, 1994.

3. **STANDARDS REFERENCED:** ACA Standards 3-4236, 3-4271, 3-4393, and 3-4434.

4. **PROCEDURES:**

   A. Responsibilities: The Executive Assistant shall be the coordinator for the Administrative Remedy Program. Investigating complaints and drafting responses will ordinarily be done by the department head concerned. The Warden's Secretary is designated as the Administrative Remedy Clerk for FCI, Allenwood.

   B. Informal Resolution: It shall be the practice of this institution to informally resolve as many

complaints as possible. Counselors and other staff will ensure the informal resolution process is implemented and followed. Unit staff should not issue a BP-229(13) form to an inmate prior to completion of the Informal Resolution Form (Attachment 1). The Unit Manager or designee will provide a separate informal resolution form for each issue presented to him or her by an inmate. The Informal Resolution form will be completed by the Correctional Counselor and not given to the inmate to complete. The Unit Manager shall maintain a log of all complaints which were informally resolved. Ordinarily, the informal resolution process should be completed within five work days from the initial receipt of the complaint. The only exceptions to this procedure will be for complaints alleged to be sensitive as defined in Program Statement 1330.13. The Administrative Remedy Coordinator, in consultation with the Warden, will determine if complaints are sensitive once submitted.

C. **Filing**: If informal resolution efforts are not successful, the inmate may then obtain a BP-229(13) from the Unit Manager or designee. Upon completion of the BP-229(13), the inmate must return the form to his Counselor for delivery to the Wardens' Secretary. The informal resolution form must be attached to the BP-229(13) form upon delivery.

Prior to issuing the BP-229(13), the Counselor will place his or her initials and a sequential number in the upper right hand margin of the form. Likewise, Counselors will document the inmate's name, number, the date issued, subject matter, staff member, and sequential number for each issuance of a BP-229(13) in the unit administrative remedy log (Attachment 2). Units will begin the log at the beginning of each fiscal year with their applicable unit number followed by a sequential number starting with 01.

The BP-229(13) shall address a single complaint and will correspond with the complaint as stated on the informal resolution form. Only those issues contained in the informal resolution form will be addressed in the BP-229(13) response.

The Executive Assistant is responsible for indexing the BP-229(13) forms. The Executive Assistant is also responsible for assigning the BP-229(13) to the appropriate department head for investigation.

All BP-229(13) receipts and rejection notices are automated in SENTRY. Unit Managers are responsible for ensuring the BP-229(13) receipts and rejection notices are retrieved from SENTRY and distributed to the inmate.

Appeals of DHO actions are filed directly to the Regional Director on a BP-230(13).

D. **Response**: Investigations will ordinarily be assigned to department heads. A draft response should be completed and routed to the Executive Assistant within the time period specified on the assignment memorandum. The following format is to be used when preparing responses to Requests for Administrative Remedy Forms.

Paragraph 1: This is in response to your Request for Administrative Remedy, receipted __Date__, in which you (complain, allege, state, etc.) that (state nature of the complaint). Use the inmate's own words as much as possible to detail the issue. Do not use employee names, but use position titles instead. End the first paragraph by identifying the nature of the relief sought, for example: "You request that the U.D.C. decision be overturned and the report be expunged."

2

-unrelated issue. For DHO and UDC appeals, each separate incident report number must be appealed on a separate form. ]

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and

comprehensive attention to the issues raised.

[(3) The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form. If more space is needed, the inmate may use up to one letter-size ( 8 1/2" by 11") continuation page. The inmate must provide an additional copy of any continuation page. The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response. Because copies of exhibits must be filed for any appeal (see § 542.15 (b) ( 3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.

(4) The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor). CCC inmates may mail their Requests to the CCM.]

The correctional counselor shall submit the form promptly (ordinarily not later than the next business day) to the Clerk for processing.

[d. Exceptions to Initial Filing at Institution

(1) Sensitive Issues . If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the

P.S. 1330.13

December 22, 1995

Page 8

Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

(2) DHO Appeals . DHO appeals shall be submitted initially to the

\* For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem. \*

11. [ RESUBMISSION §542.17

a. Rejections . The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.

b. Notice . When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.]

(1) Sensitive Submissions . Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate. Only a rejection notice will be provided to the inmate. However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2) Defects . Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects. Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and 15 calendar days at the Central Office.

(3) Criteria for Rejection . When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise. Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or problematic issue, such as medical treatment, sentence computation, staff misconduct, even though that submission may be somewhat untimely.

[c. Appeal of Rejections . When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level. The Coordinator at that level may affirm the rejection, may direct that the submission be accepted