TAM:DBS:dlm

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. ASH-SHARIEF AL'ASKARI, | : | CIVIL NO. 1:00-CV-1449 |
| Plaintiff, | : | (Judge Caldwell) |
| | : | (Magistrate Judge Smyser) |
| v. | : | |
| ROBERT S. GOLDRING, | : | |
| Defendant. | : | |

## DEFENDANT'S PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW REGARDING EXHAUSTION

In accordance with the Court's Order of April 15, 2004, the defendant, Douglas Goldring, submits these proposed findings of fact and conclusions of law regarding his affirmative defense: the Court lacks subject matter jurisdiction over this matter because the plaintiff, M.Ash-Sharief Al'Askari, failed to properly exhaust his available administrative remedies prior to brining suit. All citations below are to either the transcript of the hearing held before the Court on April 13, 2004, (i.e. Trans. at 19) or the exhibits admitted into evidence at that hearing (i.e. Deft. Ex. 1).

Findings of Facts

The Parties & Case History

1. Plaintiff M. Ash-Sharief Al'Askari currently resides in Philadelphia, Pennsylvania.

2. At the time of the events complained of in his federal complaint, Al'Askari was an inmate confined at the Allenwood Federal Correctional Institution (FCI Allenwood).

3. On August 14, 2000, Al'Askari filed a Bivens complaint against four BOP employees–Douglas Goldring,[1] Viola Hursh, Robert Zimany and Kathleen Hawk-Sawyer–alleging violations of his due process rights and a denial of access to courts.

4. On April 21, 2001, the Court granted defendants' motion to dismiss and for summary judgment on the grounds that Al'Askari failed to exhaust his administrative remedies.

5. Al'Askari filed an appeal with the Third Circuit.

6. In an unreported opinion issued on January 13, 2003, the Third Circuit affirmed the District Court's order to the extent that it dismissed Al'Askari's claims against Hursh, Zimany and Hawk-Sawyer.

---

[1]Douglas Goldring has been misidentified as Robert Goldring throughout the course of this litigation.

7. In the Order of January 13, 2003, the Third Circuit vacated the District Court's order to the extent that it dismissed Al'Askari's access to courts claim against Goldring. The Third Circuit stated that a hearing is required to resolve a factual dispute concerning the exhaustion of administrative remedies with respect to the access to courts claim against Goldring.

8. On April 13, 2004, a hearing on the defendant's affirmative defense that Al'Askari failed to exhaust his administrative remedies with respect to his access to courts claim was held before Magistrate Judge Smyser.

The Administrative Remedy Process

9. The BOP has established an administrative remedy procedure through which an inmate can seek formal review of any complaint regarding any aspect of his imprisonment. (Trans. at 27; see Deft. Ex. 1 [Administrative Remedy Program] and Deft. Ex. 2 [Institution Supplement].)

10. In order to exhaust appeals under the Administrative Remedy Procedure, an inmate must first informally pursue his grievance. (Trans. at 28; see Deft. Ex. 1, [28 C.F.R. § 542.13].)

11. If the matter cannot be resolved informally, the inmate then formally raises his grievance to the warden of the institution where he is confined; the inmate then may further appeal an adverse decision to the Regional Director, and then to the BOP's Central Office. (Trans. at 29-30; see Deft. Ex. 1 [28 C.F.R. § 542.13 et seq.].)

12. No administrative remedy appeal is considered to have been finally exhausted until it has been answered, on the merits, by the BOP's Central Office. (Trans. at 30.)

13. Related to this exhaustion process, an inmate initiates the grievance process by first attempting to informally resolve a grievance via a "BP-8" form. (Trans. at 28; Deft. Ex. 2.)

14. If the informal resolution efforts are not successful, the inmate will be issued an institutional level administrative remedy form (BP-9) by his counselor so that he can file a grievance with the warden. (Trans. at 29; see Deft. Ex. 1.)

15. If the inmate is not satisfied with the response he receives from the warden, he can/must file/appeal his grievance to the BOP's regional office on a "BP-10" form. (Trans. at 29; see Deft. Ex. 1.)

16. If the inmate is not satisfied with the response he receives from the regional office, he can/must file/appeal his grievance to the BOP's Central Office on a "BP-11" form. (Trans. at 30; see Deft. Ex. 1.)

17. It is possible that an inmate's complaint could be "rejected" or "denied" at any level–institutional, regional, or Central Office–in the administrative process. (Trans. at 31.)

18. In the context of the BOP administrative remedy process, the terms "rejected" and "denied" have distinct meaning. "Rejected" indicates that a grievance has been returned to an inmate for a technical defect (i.e. wrong form, more than one complaint on a form, missing signature). "Denied" indicates that the inmate's grievance was reviewed and rejected on its merits after an investigation. (Trans. at 31-32.)

19. If an inmate fails to file an informal complaint (BP-8) before filing an institutional level complaint with the warden (BP-9), the warden will "reject" the complaint in writing and advise the inmate that he must first file an informal complaint. (Trans. at 32.)

20. If an inmate files a grievance/appeal with the BOP's regional office and the institution (warden) has not "denied" the inmate's grievance on the merits, the regional office will "reject" the inmate's grievance/appeal for failure to exhaust at institutional level and provide the inmate with specific directions as to how to proceed. (Trans. at 35-36.)

21. If an inmate files a grievance/appeal with the BOP's central office and the institution (warden) and the regional office have not "denied" the grievance on the merits, the Central Office will "reject" the inmate's grievance/appeal for failure to exhaust at the institutional and regional level. The Central Office would provide the inmate with written instructions on how to properly proceed within the administrative remedy process. (Trans. at 36.)

22. If an inmate believes that he is in danger or could face retaliation, he may attempt to file a "Sensitive BP-9" directly with the warden without first filing an informal "BP-8" complaint. (Trans. at 37.)

23. At FCI Allenwood, the administrative remedy coordinator reviews sensitive complaints to determine whether the complaint is truly sensitive and it is appropriate to waive the requirement that an informal complaint be filed first. (Trans. at 37.)

24. If the administrative remedy coordinator determines that an inmate's complaint is not truly sensitive, the "Sensitive BP-9" is "rejected" and the inmate is directed to file an informal "BP-8" complaint and comply with the administrative remedy process. (Trans. at 37-38.)

25. An inmate can never fully exhaust his administrative remedies if he has been told to file an informal "BP-8" complaint and he ignores that direction and refuses to file an informal "BP-8" complaint. (Trans. at 38-39.)

26. At FCI Allenwood, the executive assistant receives all administrative remedy requests from inmates. (Trans. at 37, 39.)

27. All administrative remedy requests received by the executive assistant are logged into the SENTRY computer system, including those that may have been rejected for failure to comply with policy (e.g. filed late, too many issues, not on the correct form). (Trans. at 39).

28. Thus, administrative remedy requests that have been "rejected" or "denied" will appear in the SENTRY computer system along with an indication of the reason for the rejection. (Codes are used to indicate the reason for rejection and to indicate, in the appropriate situation, whether the inmate is given an opportunity to resubmit his grievance.) (Trans. at 42-43.)

Al'Askari & The Administrative Remedy Process

29.   A search of SENTRY records regarding any and all administrative remedies filed by Al'Askari during his incarceration was performed.  (Trans. at 41; see Deft. Ex. 3.)

30.   The SENTRY records reveal that Al'Askari filed 20 administrative remedies during his incarceration by BOP.  (Trans. at 43; see Deft. Ex. 3.)

31.   The SENTRY records reveal that while Al'Askari filed 20 administrative remedy complaints, he only fully exhausted with respect to one complaint (ID No. 264, 344 F-1, R-1, and A-1) and that complaint is not related to his claim in this case.  (Trans. at 43; see Deft. Ex. 3.)

32.   The SENTRY records reveal that Al'Askari did attempt to file an administrative remedy complaint regarding his allegations that the defendant, Goldring, improperly confiscated legal materials and deprived him of access to the courts.  (Trans. at 44-45; see Deft. Ex. 3 at p. 6,8, and 9 ["ABSTRACT: ATTORNEY CONFISCATED LEGAL MATERIAL"].)

33.   The SENTRY records reveal that on  May 10, 1999, Al'Askari filed an administrative remedy complaint (Remedy ID No. 185970-F1) at the institutional level alleging that an attorney (Goldring) confiscated his legal materials.  (See Deft. Ex. 3 at p. 6.)

34. The SENTRY records reveal that on May 10, 1999, Al'Askari's administrative remedy complaint (ID No. 185970-F1) was rejected because the inmate had not filed an informal complaint. (See Deft. Ex. 3 at p. 6 ["REJ STATUS REASON: INF CON"].)

35. Al'Askari admits that the warden's office instructed him to file an informal (BP-8) complaint. (Trans. at 19.)

36. The SENTRY records reveal that on June 22, 1999, Al'Askari filed an administrative remedy complaint/appeal (Remedy ID No. 185970-R1) with the BOP's regional office alleging that an attorney (Goldring) confiscated his legal materials. (Trans. at 47-48; see Deft. Ex. 3 at p.8.)

37. The SENTRY records reveal that on June 25, 1999, Al'Askari's administrative remedy complaint (ID No. 185970-R1) was rejected by BOP's regional office because the inmate had not filed an informal complaint. (See Deft. Ex. 3 at p. 8 ["REJ STATUS REASON: SEN INF CON"].) Al'Askari was instructed to resubmit his complaint at the institutional level. (Id. ["REMARKS: THE WARDEN PROPERLY REJECTED YOUR BP-9. YOU MUST RESUBMIT AT THE INSTITUTIONAL LEVEL IN PROPER FORM."])

38.    The SENTRY records reveal that on July 20, 1999, Al'Askari filed an administrative remedy complaint/appeal (Remedy ID No. 185970-A1) with the BOP's Central Office alleging that an attorney (Goldring) confiscated his legal materials.  (Trans. at 49; see Deft. Ex. 3 at p.9.)

39.    The SENTRY records reveal that on July 26, 1999, Al'Askari's administrative remedy complaint (ID No. 185970-A1) was rejected by BOP's Central Office because the inmate had not filed an informal complaint.  (Trans. at 46, 49; see Deft. Ex. 3 at p. 9 ["REJ STATUS REASON: SEN WRL"].)  Al'Askari was instructed to resubmit his complaint at the institutional level.  (Id. ["YOU MUST FIRST RESUBMIT AT THE INSTITUTIONAL LEVEL ."])

40.    Al'Askari admits that the BOP's Central Office directed him to resubmit his complaint properly at the institutional level.  (Trans. at 22.)

41.    The SENTRY records reflect that Al'Askari never resubmitted his administrative remedy complaint properly at the institutional level.

42.    Al'Askari admits that he never filed an informal (BP-8) complaint against the defendant, Goldring.  (Trans. at 19.)

Al'Askari in SHU & Informal Complaints (BP-8)

43. During April and May of 1999, Al'Askari was confined in FCI Allenwood's special housing unit (SHU). (Trans at 9-10.)

44. BOP regulations require that informal complaints (BP-8) must be completed by BOP staff, not inmates.

45. Any member of an inmate's unit team could complete a "BP-8" for an inmate. (Trans. at 79-80.)

46. Unit team members make daily rounds through the SHU. (Trans. at 80.)

47. Viola Hursh, correctional counselor, was Al'Askari's unit team counselor during April and May of 1999. (Trans. at 79.)

48. Hursh made SHU rounds during April and May of 1999 when Al'Askari was confined to SHU. (Trans. at 81.)

49. Hursh maintained an administrative remedy log where she recorded the type of administrative remedy forms that inmates requested. (Trans. at 86-87; see Deft. Ex. 5.)

50. Hursh's administrative remedy log indicates that during the period of time Al'Askari was in SHU, he made the following requests for administrative remedy forms: (1) No. 133, "Sensitive BP-10" on April 21, 1999; (2) No. 136, "Sensitive BP-9" on April 27, 1999; (3) No. 150, DHO

Appeal "BP-10" on May 18, 1999, and BP-11 on July 7, 1999; (4) No. 151, DHO Appeal "BP-10" on May 18, 1999, and BP-11 on July 7, 1999.  (Trans. at 87-88; see Deft. Ex. 5.)

51.     Hursh's administrative log book contains entries indicating that she did complete informal (BP-8) complaints for inmates during the relevant time period.  (Trans. 87-88; see Deft. Ex. 5 [Column "Date 8" reflects the date on which Hursh completed "BP-8" forms for inmates.].)

52.     During April and May of 1999, Al'Askari never requested that Hursh complete a informal (BP-8) complaint for him.  (Trans. at 85; see Deft. Ex. 5.)

Credibility Findings

53.     In light of the SENTRY Report (Deft. Ex. 3) indicating that during his incarceration, Al'Askari filed 20 administrative remedies and only fully exhausted on remedy claim (unrelated to this action), Al'Askari's claim that he is an expert with respect to the BOP's administrative remedy process who has filed hundreds of complaints is not credible.

54.     In light of the self-contradicting testimony presented by Al'Askari, his allegations that the BOP staff, specifically Viola Hursh, interfered with his administrative remedy process by refusing to visit him in SHU and complete an informal complaint are not credible in

that the defendant has produced Hursh's administrative remedy log (Deft. Ex. 5) that indicates that she did visit Al'Askari when he was in SHU and did provide and assist him with administrative remedies forms that he requested.

55.   Further, the Court finds credible the testimony of Viola Hursh that she did visit Al'Askari when he was in SHU during April and May of 1999; that she did assist him with various administrative remedy forms; and that Al'Askari never requested that Hursh complete an informal (BP-8) complaint on his behalf.

## Conclusions of Law

1.   The defendant has timely plead and pursued the affirmative defense of Al'Askari's failure to exhaust his administrative remedies.

2.   The Bureau of Prisons did not interfere with Al'Askari's use of the administrative remedy process.

3.   Al'Askari never filed or attempted to file an informal (BP-8) complaint against the defendant, Goldring, regarding the confiscation of his legal materials and access to courts claim now before the Court.

4.   Al'Askari did not exhaust his administrative remedies with respect to his only remaining claim–access to courts–against the only remaining defendant, Douglas Goldring.

5.  Pursuant to 42 U.S.C. § 1997(e)(a), Al'Askari's remaining claim against the defendant, Goldring, should be dismissed due to Al'Askari's failure to exhaust his available administrative remedies.

> Proposed Findings of Fact and Conclusions of Law submitted by,
>
> THOMAS A. MARINO
> United States Attorney
>
> /s/ D. Brian Simpson
> D. BRIAN SIMPSON
> Assistant United States Attorney
> Atty. I.D. No. OH 71431
> 228 Walnut Street
> Harrisburg, PA 17108
> Telephone: 717-221-4482
> Fax: 717-221-2246

Dated: April 30, 2004

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. ASH-SHARIEF AL'ASKARI, | : | CIVIL NO. 1:00-CV-1449 |
| Plaintiff, | : | (Judge Caldwell) |
| | : | (Magistrate Judge Smyser) |
| v. | : | |
| ROBERT S. GOLDRING, | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 30th day of April, 2004, she served a copy of the attached

DEFENDANT'S PROPOSED FINDINGS OF FACT &
CONCLUSIONS OF LAW REGARDING EXHAUSTION

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

M. Ash-Sharief Al'Askari
5737 N. 12th Street
Philadelphia, PA 19141

s/Dawn L. Mayko
DAWN L. MAYKO
Paralegal Specialist