```
              UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


M. ASH-SHARIEF AL'ASKARI,    :    CIVIL NO. 1:00-CV-1449
                             :
         Plaintiff           :    (Judge Caldwell)
                             :
     v.                      :    (Magistrate Judge Smyser)
                             :
ROBERT S. GOLDRING,          :
                             :
         Defendant           :
```

## REPORT AND RECOMMENDATION

By Order of April 12, 2001, this case was dismissed on the basis of a determination that the plaintiff had not exhausted Bureau of Prison administrative remedies.

By Order of January 13, 2003, the Court of Appeals remanded the case to this court for further proceedings. After the completion of discovery, a hearing was held on April 13, 2004 on the issue whether the plaintiff had exhausted his administrative remedies as to his claim of a denial by defendant Goldring of access to the courts.

At the hearing, testimony was presented by the plaintiff; Robin Gregg, Executive Assistant at F.C.I.

Allenwood; and Viola Hursh, Correctional Counselor.  Four exhibits were introduced.

The defendants' evidence established that the plaintiff had not filed an Informal Resolution form request for an informal resolution of a complaint that defendant Goldring had confiscated legal materials of the plaintiff, and it established that the fact that no Informal Resolution form had been filed was the reason for the rejection of a later formal grievance by plaintiff Al'Askari concerning the confiscation of legal materials by defendant Goldring.   Witness Gregg described the processes used by inmates and staff at F.C.I. Allenwood for submitting grievances by prisoners and for processing grievances by staff members.  These procedures are contained in the Administrative Remedy Program (Def. Exh. 1) and the Institution Supplement (Def. Exh. 2).  Ms. Gregg stated that records are kept of all grievances instituted by all prisoners.  Def. Exh. 3 is a list of grievances instituted by Mr. Al'Askari.  Mr. Al'Askari had filed a BP-9 grievance form on May 10, 1999 containing a grievance about the confiscation by an attorney[1] of legal material.  Def. Exh. 3, p.006.  This

---

[1] Mr. Goldring is an attorney.

2

had been rejected because it had not been submitted initially as an informal request for informal resolution.  Ms. Gregg's testimony was not impeached or contradicted.  The plaintiff argued persistently that Mr. Gregg should not have been permitted to testify as an expert.  The court held her testimony about and from institutional records to be factual, not opinion, evidence.

Viola Hursh, Mr. Al'Askari's correctional counselor in May of 1999, testified that she had no record or recollection of a request for an informal resolution from inmate Al'Askari of a complaint that Mr. Goldring had confiscated his legal materials.  She reviewed the record of grievances filed by Mr. Al'Askari from May 4, 1999 to April 30, 1999.  Def. Exh. 5.  None was filed on an Informal Resolution form.  Def. Exh. 5, fifth column.  She testified that she does fill out Informal Resolution forms for inmates when they seek an informal resolution.  Ms. Hursh's testimony was neither impeached nor contradicted.

Plaintiff Al'Askari's testimony was that he had requested a formal complaint form (BP9 Form) from Ms. Hursh to be used in his complaint to Mr. Goldring.  He did not state

3

that Ms. Hursh had not filled out an Informal Resolution form as to a grievance against Mr. Goldring.  Mr. Al'Askari stated that he had submitted a "Sensitive" grievance to the warden as to his grievance against Ms. Hursh.  He did not pursue a "Sensitive" grievance to the warden as to his claim against Mr. Goldring.  Nor did he state in his testimony that he was foreclosed from pursuing an Informal Resolution procedure against Mr. Goldring because Ms. Hursh would not complete an Informal Resolution form for him.

There is not a basis presented in the evidence presented at the hearing of April 13, 2004 for a finding that any staff member prevented Mr. Al'Askari from presenting his claim that Mr. Goldring had confiscated legal material from him in an Informal Resolution process as required by the Bureau of Prisons' regulations.

From the evidence presented, I find that the plaintiff did not make a request to a staff member to complete an informal resolution form containing the grievance as to Mr. Goldring that is the subject of this complaint.  I find that the plaintiff did not exhaust his administrative remedies as to his claim or grievance against Mr. Goldring.

4

The following are the findings of fact of this magistrate judge:

1. M. Ash-Sharief Al'Askari, the plaintiff, at the time of the events complained of in his federal complaint, was an inmate confined at the Allenwood Federal Correctional Institution (FCI Allenwood).

2. The Bureau of Prisons has established an administrative remedy procedure through which an inmate can seek formal review of any complaint, claim or grievance about any aspect of his imprisonment. (Tr. 27; D. Ex. 1 [Administrative Remedy Program] and D. Ex. 2 [Institution Supplement].)

3. In order to exhaust appeals under the Administrative Remedy Procedure, an inmate must first informally pursue his grievance. (Tr. 28; D. Ex. 1, [28 C.F.R. § 542.13].)

4. If the matter cannot be resolved informally, the inmate may formally raise his grievance to the warden of the institution where he is confined. The inmate then may further

appeal an adverse decision to the Regional Director, and then to the Bureau of Prisons Central Office. (Tr. 29-30; D. Ex. 1 [28 C.F.R. § 542.13 et seq.].)

 5. An administrative remedy appeal is not finally exhausted until it has been answered, on the merits, by the Central Office. (Tr. 30.)

 6. An inmate pursues the initial informal grievance process by using a "BP-8" form. (Tr. 28; D. Ex. 2.)

 7. If the informal resolution efforts are not successful, the inmate will be issued an institutional level administrative remedy form ("BP-9") by his counselor so that he can file a grievance with the warden. (Tr. 29; D. Ex. 1.)

 8. If the inmate is not satisfied with the response he receives from the warden, he may continue to pursue his grievance to the Bureau of Prison's regional office on a "BRP-10 form, (Tr. 29; D. Ex. 1).

 9. If the inmate is not satisfied with the response he receives from the regional office, he may continue to pursue

6

his grievance to the Central Office on a "BP-11" form.  (Tr. 30; D. Ex. 1.)

     10.  The grievance may be "rejected," or it may be "denied," at any level – institutional, regional, or Central Office – in the administrative process.  (Tr. 31.)

     11.  A rejection of the grievance is procedural, and the "rejected" grievance is returned to the inmate for a technical defect (i.e. wrong form, more than one complaint on a form, missing signature.)  A denial of the grievance is a decision on the merits of the grievance.  (Tr. 31-32.)

     12.  If an inmate fails to file an informal complaint (BP-8) before filing an institutional level complaint (BP-9) with the warden, the warden will **reject** the complaint in writing and advise the inmate that he must first file an informal complaint.  (Tr. 32.)

     13.  If an inmate files a grievance/appeal with the regional office and the institution (warden) has not **denied** the inmate's grievance on the merits, the regional office will **reject** the inmate's grievance/appeal for failure to exhaust at

institutional level and provide the inmate with specific directions as to how to proceed.   (Tr. 35-36.)

14.  If an inmate files a grievance/appeal with the central office and the institution (warden) and the regional office have not **denied** the grievance on the merits, the Central Office will **reject** the inmate's grievance/appeal for failure to exhaust at the institutional and regional level.  The Central Office would provide the inmate with written instructions on how to properly proceed within the administrative remedy process.  (Tr. 36.)

15.  If an inmate believes that he is in danger or could face retaliation, he may attempt to file a "Sensitive BP-9" directly with the warden without first filing an informal "BP-8" complaint.  (Tr. 37.)

16.  At FCI Allenwood, the administrative remedy coordinator reviews sensitive complaints to determine whether the complaint is truly sensitive and it is appropriate to waive the requirement that an informal complaint be filed first. (Tr. 37.)

17.  If the administrative remedy coordinator determines that an inmate's complaint is not sensitive, the "Sensitive BP-9" is rejected and the inmate is directed to file an informal "BP-8" complaint and comply with the administrative remedy process.  (Tr. 37-38.)

18.  An inmate can never fully exhaust his administrative remedies if he has been told to file an informal "BP-8" complaint and he ignores that direction and refuses to file an informal "BP-8" complaint.  (Tr. 38-39.)

19.  At FCI Allenwood, the executive assistant receives all administrative remedy requests from inmates.  (Tr. 37, 39.)

20.  All administrative remedy requests received by the executive assistant are logged into the SENTRY computer system, including those that may have been rejected for failure to comply with policy (e.g., filed late, too many issues, not on the correct form).  (Tr. 39).

21.  Thus, administrative remedy requests that have been "rejected" or "denied" appear in the SENTRY computer system along with an indication of the reason for the

rejection.  (Codes are used to indicate the reason for rejection and to indicate, in the appropriate situation, whether the inmate was given an opportunity to resubmit his grievance.)  (Tr. 42-43.)

      22.  A search of SENTRY records regarding any and all administrative remedies filed by Al'Askari during his incarceration was performed.  (Tr. 41; D. Ex. 3.)

      23.  The SENTRY records reveal that Al'Askari filed 20 administrative remedies during his incarceration by Bureau of Prisons.  (Tr. 43; D. Ex. 3.)

      24.  While Al'Askari filed 20 administrative remedy complaints, he fully exhausted with respect to only one complaint (ID No. 264, 344 F-1, R-1, and A-1.)  That complaint is not related to his claim in this case.   (Tr. 43; D. Ex. 3.)

      25.  Al'Askari did attempt to file an administrative remedy complaint regarding his allegations that defendant Goldring improperly confiscated legal materials and deprived him of access to the courts.  (Tr. 44-45; D. Ex. 3 at p.6, 8 and 9 ["ABSTRACT: ATTORNEY CONFISCATED LEGAL MATERIAL].)

10

     26.  On May 10, 1999, Al'Askari filed an administrative remedy complaint (Remedy ID No. 185970-F1) at the institutional level alleging that an attorney (Goldring" confiscated his legal materials.  (D. Ex. 3 at p.6.)

     27.  On May 10, 1999, Al'Askari's administrative remedy complaint (ID No. 185970-F1) was rejected because the inmate had not filed an informal complaint.  (D. Ex. 3 at p.6 [REJ STATUS REASON: INF CON"].)

     28.  The warden's office instructed Al'Askari to file an informal (BP-8) complaint.  (Tr. 19.)

     29.  On June 22, 1999, Al'Askari filed an administrative remedy complaint/appeal (Remedy ID No. 185970-R1) with the Bureau of Prisons' regional office alleging that an attorney (Goldring) confiscated his legal materials.  (Tr. 47-48; D. Ex. 3 at p.8.)

     30.  On June 25, 1999, Al'Askari's administrative remedy complaint (ID No. 185970-R1) was rejected by Bureau of Prisons' regional office because the inmate had not filed an informal complaint.  (D. Ex. 3 at p.8 ["REJ STATUS REASON: SEN

INF CON"].)  Al'Askari was instructed to submit his complaint at the institutional level.  Id. ["REMARKS: THE WARDEN PROPERLY REJECTED YOUR BP-9.  YOU MUST RESUBMIT AT THE INSTITUTIONAL LEVEL IN PROPER FORM."]

    31.  On July 20, 1999, Al'Askari filed an administrative remedy complaint/appeal (Remedy ID No. 185970-A1) with the Bureau of Prisons' Central Office alleging that an attorney (Goldring) confiscated his legal materials.  (Tr. 49; D. Ex. 3 at p.9.)

    32.  On July 26, 1999, Al'Askari's administrative remedy complaint (ID No. 185970-A1) was rejected by the Bureau of Prisons' Central Office because the inmate had not filed an informal complaint.  (Tr. 46, 49; D. Ex. 3 at p.9 ["REJ STATUS REASON: SEN WRL"].)  Al Askari was instructed to resubmit his complaint at the institutional level.  (Id. ["YOU MUST FIRST RESUBMIT AT THE INSTITUTIONAL LEVEL."])

    33.  The Bureau of Prisons' Central Office directed Al'Askari to resubmit his complaint properly at the institutional level.  (Tr. 22.)

34. Al'Askari did not resubmit his administrative remedy complaint properly at the institutional level.

35. Al'Askari did not file an informal (BP-8) complaint against the defendant, Goldring.  (Tr. 19.)

36. During April and May of 1999, Al'Askari was confined in FCI Allenwood's special housing unit (SHU).  (Tr. 9-10.)

37. Bureau of Prisons' regulations require that an informal complaint (BP-8) must be completed by a staff member and not by the inmate.

38. Any member of an inmate's unit team may complete a "BP-8" for an inmate.  (Tr. 79-80.)

39. Unit team members make daily rounds through the SHU.  (Tr. 80.)

40. Viola Hursh, correctional counselor, was Al'Askari's unit team counselor during April and May of 1999.  (Tr. 79.)

13

41. Hursh made SHU rounds during April and May of 1999 when Al'Askari was confined to SHU. (Tr. 81.)

42. Hursh maintained an administrative remedy log where she recorded the type of administrative remedy forms that inmates requested. (Tr. 86-87; D. Ex. 5.)

43. During the period of time that Al'Askari was in SHU, he made the following requests for administrative remedy forms: (1) No. 133, "Sensitive BP-10" on April 21, 1999; (2) No. 136, "Sensitive BP-9" on April 27, 1999; (3) No. 150, DHO Appeal "BP-10" on May 18, 1999, and BP-11 on July 7, 1999; (4) No. 151, DHO Appeal "BP-10" on May 18, 1999, and BP-11 on July 7, 1999. (Tr. 87-88; D. Ex. 5.)

44. During April and May of 1999, Al'Askari did not request that Hursh complete a formal (BP-8) complaint for him. (Tr. 85; D. Ex. 5).

45. Al'Askari never filed or attempted to file an informal (BP-8) complaint against the defendant, Goldring, regarding the confiscation of his legal materials and access to courts claim now before the Court.

14

The following are the pertinent conclusions of law:

1. The plaintiff did not exhaust his administrative remedies with respect to his only remaining claim, a denial of access to the courts, against the only remaining defendant, Douglas Goldring.

2. Pursuant to 42 U.S.C. § 1997(e)(a), the plaintiff's remaining claim against the defendant, Goldring, should be dismissed due to the plaintiff's failure to exhaust his available administrative remedies.

It is recommended that the court adopt these findings and conclusions and that the remaining claim be dismissed.

> ***/s/ J. Andrew Smyser***
> J. Andrew Smyser
> Magistrate Judge

Dated:  May 5, 2004.